## STATE OF NORTH DAKOTA EX REL. WILLIAM LANGER et al., Plaintiffs, v. FRANK E. PACKARD et al., Defendants and Respondents.

(168 N. W. 673.)

**Personal property — for purpose of taxation — may be separated from owner — may be taxed where it is — although not at domicil of owner.**

1. For the purposes of taxation, personal property, even though of an intangible character, may be separated from its owner, and he may be taxed on its account at the place where it is, although not the place of his domicil.

**Bills receivable — obligations or credits — owned by nonresident — derived from business in this state — assessable at business domicil — of nonresident, his agent or representative in state in same manner as though owned by a resident.**

2. Under the provisions of chapter 229, Laws of 1917, all bills receivable, obligations, or credits owned by a nonresident and derived by him from a business conducted in this state are assessable at the business domicil of said nonresident, his agent, or representative within this state in the same manner

---

NOTE.—For authorities discussing the question as to whether personal property having a situs for taxation elsewhere, is subject of taxation in the state of the owner's domicil, see note in 36 L.R.A.(N.S.) 295. As to when debt may have situs for purpose of taxation apart from domicil of creditor, see notes in 2 L.R.A.(N.S.) 637, and 14 L.R.A.(N.S.) 493. On situs as between different states and counties, of intangible personal property for purposes of taxation, see note in L.R.A. 1915C, 914.

as though such bills receivable, obligations, or credits were owned by a resident of this state.

**Imposing taxes on tangible personal property — power of — state not deprived of — because owner has removed same from state.**

3. The state is not deprived of power to impose taxes on obligations evidenced by bills receivable merely because the owner has removed the bills receivable from the state.

**Obligations or debts — owed by citizens of state — to nonresidents — not purpose to tax all — only such as result from business transacted in this state.**

4. It was not the purpose of chapter 229, Laws 1917, to impose a tax upon all obligations or debts owed by citizens of North Dakota to residents of other states, but to impose such taxes only upon such credits and obligations as have arisen and have been accumulated in the course of business by one who is actually conducting a business in the state.

**Established place of business — in state — nonresident having none — loaning money in state — on applications sent to him by loan brokers — received at home office in another state — moneys remitted to brokers — by checks or draft — on bank at domicil in foreign state — not doing business in this state — such mortgage securities not subject to local taxation — within meaning of law.**

5. A nonresident who has no established place of business or any duly authorized agent or representative in this state, and keeps no funds for investment in this state, but loans moneys on applications sent to him by loan brokers, and receives and accepts such applications at his home office in another state, from whence he transmits the moneys to the broker or borrower by draft or cashier's check drawn upon a bank in the state of such nonresident's domicil, is not doing business in this state within the meaning of chapter 229, Laws 1917, so as to subject such mortgage securities to taxation in this state.

Opinion filed July 19, 1918.

Original proceeding by the State on the relation of William Langer and others for the issuance of a writ prohibiting and enjoining the State Tax Commission and others from assessing and listing for taxation certain real estate mortgage securities.

Writ issued.

*Lawrence & Murphy, C. A. Pollock, W. S. Lauder, H. R. Turner, Allen W. Wood,* and *Butler, Mitchell, & Doherty,* for plaintiffs.

The questions here involved are of great interest and importance, and

if decided by this court it would prevent numerous suits, and would determine the rights of the state as a sovereign power or restrict its operation.   There is a great public interest and questions involved which affect the state's sovereignty.   State ex rel. Linde v. Packard, 155 N. W. 666–668.

"The term, 'personal property,' in its general sense, is synonymous with 'personal goods.' "   State v. Brown, 68 Tenn. 53; Comp. Laws 1913, § 2074.

The law has for its object the taxation of the same kind of property owned by a nonresident as that owned by a resident.   It does not require the listing for taxation of any business, or the capital stock in any business, or the right to engage in any business.   It is simply a classification of moneys and credits as a species of personal property.   Laws 1917, chap. 229.

The state cannot tax property not within its jurisdiction or which is not owned by a resident of the state who is thus within the jurisdiction of the state.   1 Cooley, Taxn. 3d ed. p. 84; Augusta v. Kimball, 91 Me. 605.

"The state has no jurisdiction to tax property of nonresidents which has no actual situs within the state."   Com. v. Lehigh V. R. Co. 186 Pa. 235; 37 Cyc. 805.

As to intangible personal property, the general rule is that it can have no situs other than that of its owner's domicil.   37 Cyc. 801, 956; Kirtland v. Hotchkiss, 100 U. S. 491, 25 L. ed. 558; New Orleans v. Stemple, 175 U. S. 309, 44 L. ed. 174, 20 Sup. Ct. Rep. 110; Boyd v. Selma, 96 Ala. 144, 16 L.R.A. 729, 11 So. 393; People v. Park, 23 Cal. 138; Sheeler v. Sohmer, 58 L. ed. 1034.

"Notes and mortgages are of the same nature, and while they may not have become so generally recognized as tangible personal property, yet they have such a concrete form that we see no reason why a state may not declare that, if found within its limits, they shall be subject to taxation."   New Orleans v. Stempel, 44 L. ed. 181.

"There must be jurisdiction over either the property of the person of the owner, else the power cannot be exercised; but when the property is within our jurisdiction, and enjoys the protection of our state government, it is justly taxable, and it is of no moment that the owner, who

is required to pay the tax, resides elsewhere." Cleveland, etc., R. Co. v. Pennsylvania, 21 L. ed. 187.

"And as respects the power of a state to tax property beyond its jurisdiction belonging to a foreign corporation, it is of no moment whether the corporation be a carrier or a trading company, for a state is wholly without power to impose such a tax." International Paper Co. v. Massachusetts, 246 U. S. 135, 62 L. ed. 624.

The physical presence of personal property in this state renders such property taxable here. Blackstone v. Miller, 47 L. ed. 445; 15 Wall. 300; Monongahela R. C. C. & V. Co. v. Assessors, 2 L.R.A.(N.S.) 637; New Orleans v. Stempel, 175 U. S. 317, 44 L. ed. 179, 20 Sup. Ct. Rep. 110; State Assessors v. Comptoir National D' Escompte, 191 U. S. 401, 48 L. ed. 238, 24 Sup. Ct. Rep. 109.

In the cases used by respondents the physical presence of the property in this state was the actual test. With the law of these cases there is no dispute. State Assessor v. Comptoir, etc., 48 L. ed. 232; Billinghurst v. Spink County, 58 N. W. 272.

The board of supervisors of a county cannot by an order fix the situs of a debt for the purpose of taxation; where there is no property in the state, nor agent in possession of property in the state, the situs of the property cannot be fixed within the state. Adams v. Colonial & U. S. Mortg. Co. 82 Miss. 263, 17 L.R.A.(N.S.) 138; State Tax on Foreign-Held Bonds, 15 Wall. 300, 21 L. ed. 179; State Met. L. Ins. Co. v. Newark, 62 N. J. L. 74, 40 Atl. 573; Assessors v. New York L. Ins. Co. 54 L. ed. 601.

"The maxim, *mobilia personam sequuntur,* is not an inflexible rule, but, upon the contrary, may be modified or disregarded by the declaratory law of the state in defining promissory notes as tangible personal property, when held or located within its domain." Wheeler v. Sohmer, 58 L. ed. 1033.

Statutes providing for taxation are to be construed strictly against the state and in favor of the taxpayers, and the burdens and liabilities which they impose are to be kept within the strict letter of the law, and not extended beyond its clear terms by any inference, implication or analogy. 37 Cyc. 768; St. Louis v. Wiggins Ferry Co. 11 Wall. 423, 20 L. ed. 192.

"The power to tax is limited to persons, property, and business with-

in the state, and it cannot reach the person of a nonresident." Hillman Land & I. Co. v. Com. L.R.A. 1915C, 904.

The statute does not relate to or cover the taxation of a business. Louisville & J. Ferry Co. v. Kentucky, 47 L. ed. 513; M'Culloch v. Maryland, 4 Wheat. 316, 429, 4 L. ed. 579.

A nonresident who has no established place of business or any authorized agent or representative in this state, and keeps no funds for investment in the state, who loans moneys on applications sent to him by loan brokers and receives and accepts such applications at his home office in another state, from which he transmits the moneys to the broker or borrower by draft or cashier's checks drawn upon a bank in the state of such nonresident's domicil, is not "doing business in this state," within the meaning of the statutes in question, so as to subject the mortgage securities so taken to taxation in this state. United States Sav. & L. Co. v. Shain, 8 N. D. 136, 77 N. W. 1006.

"The taxing power of a state does not extend beyond its territorial limits. Within such limits it may tax persons, property, incomes, or business." State v. Wis. Tax Commission, 152 N. W. 848; U. T. Co. v. Kentucky, 199 U. S. 194, 50 L. ed. 150, 26 Sup. Ct. Rep. 36, 4 Ann. Cas. 493; Tax on Foreign-Held Bonds, 15 Wall. 300, 21 L. ed. 179; Territory v. Delinquent Tax List, 24 Pac. 182; Holland v. Board of Commissioners, 39 Pac. 575; Adams v. Colonial & United States Mortg. Co. 34 So. 482; Jack v. Walker, 96 Fed. 578, affirmed 100 Fed. 1006; Hathaway v. Edwards, 85 N. E. 28; Com. v. Peebles, 119 S. W. 774; National F. Ins. Co. v. Assessors, 46 So. 117; General Elec. Co. v. Assessors, 46 So. 122; County Comrs. v. Cutler, 3 Colo. 351; Goldgart v. People, 106 Ill. 29; Firesman v. Byrns, 69 Ind. 254; Com. v. Consolidated Casualty Co. 185 S. W. 508.

The residence or domicil of the corporation was in Minnesota. "A corporation cannot have two domicils or residences at the same time. Newport & C. Bridge Co. v. Woolley, 78 Ky. 523; Bank of Augusta v. Earle, 13 Pet. 521, 10 L. ed. 274.

The state may tax moneys and credits of a nonresident "when the money is invested, the debt contracted and the investment controlled by a resident agent of the owner having the evidences of the debt in his possession." Walker v. Jack, 88 Fed. 576; State Tax on Foreign-Held Bonds, 15 Wall. 300; Kirtland v. Hotchkiss, 100 U. S. 498; Sav-

ings & L. Soc. v. Multnomah Co. 169 U. S. 421, 18 Sup. Ct. Rep. 392;
Finch v. York Co. 19 Neb. 50, 26 N. W. 589; Billinghurst v. Spink Co.
5 S. D. 84, 58 N. W. 272; Re Jefferson, 35 Minn. 215, 28 N. W. 256;
Redmond v. Commissioners, 87 N. C. 122; People v. Ogdensburg,
48 N. Y. 390; Catlin v. Hull, 21 Vt. 152; People v. Smith, 88 N. Y.
567; Hutchinson v. Board, 66 Iowa, 35, 23 N. W. 249; People v. Davis,
112 Ill. 272; People v. Insurance Co. 29 Cal. 534; Herron v. Keeran,
59 Ind. 472; New Orleans v. Stempel, 175 U. S. 309; Bristol v. Wash-
ington County, 177 U. S. 133; Metropolitan L. Ins. Co. v. New Or-
leans, 205 U. S. 395; Holland v. Board of Commissioners, 39 Pac. 575.

The fact that some of the interveners have complied with the for-
eign corporation act of North Dakota does not enlarge the power of the
state to tax the notes in question. Merely obtaining a permit to trans-
act business within the state does not affect the situation unless the
authority obtained is exercised. Washburn Mill Co. v. Bartlett, 3
N. D. 138, 54 N. W. 544; Com. v. Consolidated Casualty Co. 185 S.
W. 508.

*William Langer,* Attorney General, *E. B. Cox,* Assistant Attorney
General, and *Frank E. Packard,* for defendants and respondents.

Two subjects may be submitted in one proposed amendment to the
Constitution. Const. § 202, § 176, Prior to Amendment, 1914; Gott-
stein v. Lister, 88 Wash. 462; State ex rel. Hudd v. Timme, 54 Wis.
318, 11 N. W. 785; State ex rel. Morris v. Mason, 43 La. Ann. 590, 9
So. 776; State ex rel. Adams v. Herried, 10 S. D. 109, 72 N. W. 93;
Hamlin v. Clark, 136 Ga. 313, 38 L.R.A.(N.S.) 77, 71 S. E. 479;
Jones v. McClaughty, 151 N. W. 210; Lobaugh v. Cook, 127 Iowa, 181;
Cabert v. Chicago Rapid City & P. R. Co. 171 Mo. 84; People v. Sours,
31 Colo. 369; People v. Provost, 65 Colo. 199; State ex rel. Lantum
& N. Stationery & Printing Co. v. Kiplinger, 32 Wash. 831, 70 Pac.
438; Chicago v. Reeves, 220 Ill. 274; Turner v. Hamsey, 163 Pac. 213;
State v. Jones, 64 So. 241.

The power to tax is an incident to sovereignty, and is possessed by all
state governments without being expressly conferred by the people in
the Constitutions. 1 Cooley, Taxn. 3d ed. 7; Judson, Taxn. p. 3; Mer-
cantile Ins. Co. v. Junkin, 19 Ann. Cas. 269, and note on p. 270, 85
Neb. 561.

Intangible personal property has no actual physical situs, and for the

purpose of taxation a legal situs is assigned it.   So long as the legislature does not infringe upon the power given to Congress over interstate commerce by the Constitution of the United States, it is entirely within its power to fix a situs either at the domicil of the creditor or the debtor, or at the domicil of neither.    Liverpool & L. & G. Ins. Co. v. Assessors, L.R.A.1915C, 914.

The maxim, *mobilia sequuntur personam,* embodies the time-honored general principle of law in relation to situs for the purposes of property taxation of intangible personalty.    The general rule has been that the situs of intangibles for the purpose of property taxation was at the domicil of the creditor.    Walker v. Jack, 31 C. C. A. 462, 88 Fed. 576; Mackay v. San Francisco, 113 Cal. 392, 45 Pac. 696; Wright v. Southwestern R. Co. 64 Ga. 783; Matsenbaugh v. People, 194 Ill. 108, 88 Am. St. Rep. 134.

But there has been a great departure from such general rule, and now bonds, notes, and other forms of commercial paper constitute not merely evidence of but property itself, thus giving them the same legal situs, as tangible chattels, susceptible of situs determined by physical locality.    Blackstone v. Miller, 168 U. S. 189, 47 L. ed. 439, 23 Sup. Ct. Rep. 277; Wheeler v. Schmer, 233 U. S. 433, 58 L. ed. 1030; Walker v. Jack, 31 C. C. A. 462, 88 Fed. 576; Blain v. Virby, 25 Kan. 501; People ex rel. Westbrook v. Ogdensburg, 48 N. Y. 390, 208 U. S. 14, 52 L. ed. 370.

That there may be a business situs of tangible personal property for purposes of taxation apart from the domicil of the owner is not well established.    Monongahela River Consol. Coal & Coke Co. v. Assessors, 2 L.R.A.(N.S.) 637; State Assessors v. Comptoir National D'Escompte 191 U. S. 368, 48 L. ed. 232; Goldgart v. People, 106 Ill. 25.

The next exception to the rule arises where the instruments which evidence the credit are in the hands of an agent of the owner, for the purpose of enabling such agent to transact the business of the owner, and in which business of the owner the credits constitute as it were the subject-matter of the stock in trade in such business.    Matzenbaugh v. People, 194 Ill. 108, 88 Am. St. Rep. 134, 62 N. E. 546; Re Jefferson, 35 Minn. 215, 28 N. W. 256; Adams v. Colonial & U. S. Mortg. Co. 82 Miss. 263, 17 L.R.A.(N.S.) 138, 100 Am. St. Rep. 633;

Re Romaine, 127 N. Y. 80, 12 L.R.A. 408, 27 N. E. 759; Billinghurst v. Spink Co. 5 S. D. 84, 58 N. W. 272; Catlin v. Hull, 21 Vt. 352.

The rule is now, however, that there may be a situs of intangible personalty for taxation purposes apart from the domicil of the owner, although there be neither an agent within the state nor physical presence of the written evidences of credit. This condition arises through legislation. That the legislature has the power to nullify the rule of *mobilia sequuntur personam* is well established and settled. Board of Assessors v. Comptoir National D'Escompte, supra; Met. L. Ins. Co. v. Assessors, 115 La. 698, 203 U. S. 395; Liverpool & L. & G. Ins. Co. v. Assessors, 122 La. 98, 221 U. S. 346, L.R.A. 1915C, 903; Parker v. Strauss, 49 La. Ann. 1173, 22 So. 329; Kimball Co. v. Board of Commissioners, 116 Pac. 644; Jameson v. Com. 90 S. E. 640; Bristol v. Washington County, 117 U. S. 133; DeGany v. Lederar, 239 Fed. 568; Sess. Laws 1917, chap. 229; General Elec. Co. v. Assessors, 121 La. 116; New Orleans v. Stempel, 175 U. S. 309; Met. L. Ins. Co. v. New Orleans, 205 U. S. 395; Blackstone v. Miller, 188 U. S. 205; Kimble Co. v. Board of Commissioners, 166 Pac. 644; Freedom Twp. v. Douglas, 160 Pac. 1147; Gray, Lim. of Taxing Power, ¶ 89; People v. Barker, 23 App. Div. 524, affirmed 155 N. Y. 665; Beale, Foreign Corp. ¶ 488; 37 Cyc. 801.

Our statute is taken from the statutes of Louisiana, where it had been construed, and our court must presume that the North Dakota legislature in adopting it intended to adopt the construction placed upon it by the supreme court of that state. 6 R. C. L. 49.

It is plain that where business is transacted within a state by a nonresident, the credits growing out of such business may be given a local situs and subjected to taxation by an act of the legislature. 6 R. C. L. 47.

The word "business" is one which is used with widely variant meanings. It is used broadly to signify "that which busies" or engages time, attention, or labor as a principal serious concern or interest. Esterbrook v. Hebrew Ladies Orphan Soc. 85 Conn. 289, 41 L.R.A. (N.S.) 615, 82 Atl. 561; Bouvier's Law Dict.; Goddard v. Chaffee, 2 Allen, 395, 79 Am. Dec. 796; Harris v. State, 50 Ala. 127; Webster's New Int. & Century Dict.; Note to Liverpool & L. & G. Ins. Co. v. Assessors, L.R.A.1915C, 914; Words & Phrases, 2d Series, vol. 1, pp.

577, 1915, and vol. 11, p. 108; Strand, 2d ed. 234; Allen v. Com. 188 Mass. 59, 69 L.R.A. 599, 74 N. E. 287; Lemmons v. State, 50 Ala. 130; Baker v. Willis, 123 Mass. 195.

In applying these rules of law to the subject "doing business," the courts hold that the movement of the goods to the first place and their continuance thence to the second point are connected parts of a continuing interstate commerce movement, and that a party could not be subjected to an occupation privilege tax under the law of the state, because of sales consummated at either of the two destinations. The court fixes the circumstances under which goods in transit mingle with the goods of the state and become subject to its taxing power. Hoyman v. Hayes, 236 U. S. 178; General Oil Co. v. Grain, 209 U. S. 211; Goldwell v. North Carolina, 187 U. S. 622; Grenshaw v. Arkansas, 227 U. S. 389; Sioux Remedy Co. v. Cope, 235 U. S. 197; Will v. Bismarck, 36 N. D. 570, 163 N. W. 550; Mpls. & Northern Elev. Co. v. Traill County, 9 N. D. 208; America Harver Co. v. Schaffer, 68 Fed. 750; Haynes v. Briggs, 41 Fed. 468; Singer Mfg. Co. v. Wright, 97 Ga. 114, 35 L.R.A. 497.

"A foreign corporation which establishes a domicil here, and brings its property into the jurisdiction, and mingles it with the general mass of commercial capital, is taxable here." So. Cotton Oil v. Wemple, 44 Fed. 44; People v. Trust Co. 96 N. Y. 387; People v. Mining Co. 105 N. Y. 76; Tidewater Pipe Co. v. Assessors, 57 N. J. L. 516; People ex rel. v. Roberts 152 N. Y. 59; Judson, Taxn. 1917 ed.; Com. v. American Bell Tel. Co. 129 Pa. 217; People v. American Bell Tel. Co. 117 N. Y. 241; United States v. American Bell Tel. Co. 29 Fed. 17; Cheney Bros. Co. v. Massachusetts, 146 U. S. 323; Davenport v. Miss. & M. R. Co. 12 Iowa, 539; Latrobe v. Baltimore, 19 Md. 13; People v. Eastman, 25 Cal. 601; State v. Earl, 1 Nev. 394; Arapahoe County v. Cutter, 3 Colo. 349; People, Jefferson v. Smith, 88 N. Y. 576; Grant v. Jones, 39 Ohio St. 506; State v. Smith, 69 Miss. 79; Holland v. Silver Bow County, 15 Mont. 460, 27 L.R.A. 797.

CHRISTIANSON, J. This is an original proceeding in this court against the members of the state tax commission, the county commissioners, and county auditor of Cass county and the assessor of the city of Fargo, to prevent them from assessing and listing for taxation certain real estate mortgage securities belonging to the relators.

The jurisdiction of the court has not been challenged. On the contrary, the attorney general of the state (who appears as one of the relators) and the members of the state tax commission (who appears as respondents) join in the request that this court assume jurisdiction.

The relator Wheeler, who is a resident of the state of Minnesota, avers "that he is engaged in the real estate and loaning business and in the purchase and sale of mortgages, bonds, credits, and other securities held and owned by him until collection thereof; that at times in the furtherance of his lawful occupation and business he advances and loans to citizens of the state of North Dakota moneys, and takes therefor notes, bonds, obligations, and other evidences of debt secured by mortgages upon real and personal property, and at times purchases the same, and for that purpose employs an agent in the state of North Dakota to take applications for loans, cause to be executed notes and mortgages, and forward the same to petitioner, who forwards to the agent the moneys for said loans, which is by said agent delivered to the borrower within the state of North Dakota, which said promissory notes, mortgages, and credits, however, are not held in the state of North Dakota, but in the actual possession of the petitioner in the state of Minnesota; in some cases, however, after the time of assessment and levy, are at short periods in the possession of said agent in the state of North Dakota for collection purposes only, and never except for a few days, and that not until after all property in said state is listed for taxation for that year. That said bonds, notes, negotiable instruments, and mortgages are in different and various counties of the state of North Dakota, and are of different and varying values and are of different degrees, namely, first, second, and third mortgages; and that the equity in the property securing said evidences of indebtedness vary greatly in degree and time, and that the interest of this affiant therein is not subject to arbitrary classification, but depends wholly upon the circumstances surrounding the particular piece of property involved and the particular evidence of indebtedness and security involved; that the properties securing said evidences of debt are located in various taxing districts of the state of North Dakota, and subject to the particular jurisdiction where levies are and have been made for the purpose of providing revenue for said particular taxing district and to meet the current expenses of

said taxing district; and said properties securing said indebtedness are also listed as against the owner thereof, and taxes paid thereon in the various taxing districts of the said state and the various counties and other governmental subdivisions." He further avers that the moneys, credits, notes, and obligations so sought to be taxed by the respondents in the state of North Dakota are and have been taxed in the state of Minnesota, the residence and domicil of the petitioner.

The corporation relators are all Minnesota corporations, and they allege that a part of their business has been to loan money on promissory notes, secured by mortgages on real estate in North Dakota, and that each of them has heretofore loaned large sums of money on promissory notes secured by mortgages on farm lands in North Dakota, and are now the owners and holders of such notes and mortgages, some of which are secured on lands situated in the county of Cass. It is averred that "persons or corporations living in the state of North Dakota or engaged in the banking, loan, or real estate business there, having applications for loans made to them by owners of farm and other lands in the state of North Dakota, submit such applications to the Capital Trust & Savings Bank, the applications for such loans being in writing, and are sent by mail to the office of the Capital Trust & Savings Bank at St. Paul, Minnesota, for its consideration. In some cases, said petitioner accepts such applications, and in other cases the applications are rejected. If the petitioner decides to make the loan applied for, the notes and mortgages are executed by the borrower, who is generally a resident of the state of North Dakota. The loan broker in North Dakota, through whom such application is made, attends to the execution and recording of all papers, and when the notes, mortgages, and other papers are complete, they are sent by mail to the petitioner at St. Paul, Minnesota, for its examination and approval. The said petitioner examines the papers at St. Paul; the abstracts of title are examined for it at St. Paul, and, if the papers are approved, the money loaned is transmitted by said petitioner, at St. Paul, to the loan broker through whom the application is received, the funds being transmitted by draft or cashier's check drawn on funds in the state of Minnesota. The said petitioner has no agent acting for it in such matters in the state of North Dakota, and the business is transacted through loan brokers in the state of North Dakota, who have no authority to

act for said petitioner or accept loans for it or bind it in any way. The loan brokers in North Dakota through whom such applications are received receive their commissions or compensation from the borrower, and act as the borrower's agent. The mortgages and notes are usually signed within the state of North Dakota, but are passed on by the said petitioner at its office at the city of St. Paul. After the loan is made, the notes, mortgages, and other papers in connection with the loan are kept by said petitioner at its office in the city of St. Paul so long as it owns the same. The said petitioner does not and has not heretofore kept any funds within the state of North Dakota for investment. The notes secured by such mortgages are in all cases made payable at the office of said petitioner in the city of St. Paul. In some cases the said petitioner purchases mortgages from banks or persons engaged in the mortgage loan business in the state of North Dakota, and in all such cases the papers relating to such mortgage loan are sent to the said petitioner at its office at St. Paul for examination and approval; and if the petitioner determines to purchase such loan, the purchase price is transmitted from the city of St. Paul by draft or cashier's check or other like method, in the same manner as where the loan is made by the petitioner in the first instance." It is further averred that all the corporation relators pursued the methods just outlined in obtaining the securities sought to be taxed.

It is asserted by and on behalf of all of the relators that the state tax commission has requested and demanded that each relator file a return, listing for taxation as credits or as personal property the notes owned by them, secured as aforesaid by mortgages on lands in the state of North Dakota. And it is further asserted that the respondents and each of them, claiming authority to do so by virtue of chapter 229, Laws 1917, have threatened to, and will, unless enjoined by this court from so doing, assess and list for taxation within the respective counties in the state of North Dakota the notes and mortgages so owned by the several relators and held by them in the state of Minnesota.

These allegations are not denied. But the respondents assert that under the facts alleged the securities in question are assessable under the provisions of chapter 229 of the Laws of 1917. The bill for this enactment was entitled, "An Act to Amend and Re-enact § 2095, of the Compiled Laws of North Dakota for the Year 1913, Relating to Rev-

enue and Taxation, and Fixing the Situs of Personal Property for Tax Purposes."

The body of the law reads: "Except as otherwise provided in this chapter, personal property shall be listed and assessed in the county, town or district where the owner or agent resides; the capital stock and franchises of corporations and persons shall be listed in the county, town or district where the principal office or place of business of such corporation is located in this state; and if there be no principal office or place of business in this state where such corporation or person transact business, then personal property pertaining to the business of a merchant or manufacturer or corporation shall be listed in the town or district where his business is carried on. *The taxation and revenue laws of this state shall apply with equal force to any person or persons representing in this state business interests that may claim domicil elsewhere, the intent and purpose being that no nonresident, either by himself or through any agent shall transact business within the state without paying to the state a corresponding tax with that exacted of its own citizens; and all bills receivable, obligations or credits arising from business done in this state are hereby declared assessable within this state, and at the business domicil of said nonresident, his agent, or representative; provided, however, no insurance company paying the state a percentage of its gross premiums received in the state shall be subject to the provisions of this act.*"

(In order to visualize the statute, we have italicized that portion thereof which was added by the amendment.)

The relators contend:

(1) That the notes and obligations which they have acquired in the manner above set forth do not arise from business done in the state of North Dakota, and consequently the respondents are acting without authority of law in attempting to assess the same for the purposes of taxation; and,

(2) That if the act under consideration is susceptible of being construed so as to apply to notes, secured by mortgages upon lands in the state of North Dakota, owned by citizens of the state of Minnesota, and held by them in that state, it deprives them of their property without due process of law and abridges their privileges and immunities as

citizens of the United States in violation of the 14th Amendment and § 11 of article 4 of the Constitution of the United States.

At the outset it is well to note that the avowed purpose of the statute under consideration is to fix the situs of personal property for purposes of taxation. The original section provided that personal property should be listed where the owner or agent resides, and that the capital stock and franchises of corporations and persons should be listed where the principal office or place of business of the corporation is located; and if there is no principal office or place of business in the state, that then personal property pertaining to the business of a merchant or manufacturer or corporation should be listed where the business is carried on. The amendment merely extended these provisions, and made the statute applicable to nonresidents transacting business in this state. The intent and purpose of the amendment as declared by the legislature was to require nonresidents transacting business within the state to pay a tax corresponding to that exacted from citizens of the state. And in that connection and to that end it provided that "all bills receivable, obligations or credits arising from business done in this state are (hereby declared) assessable within this state and at the business domicil of the said nonresident, his agent, or representative." Obviously, the legislature had no intention by the enactment of this statute to impose a privilege or occupation tax. The legislature was dealing with a tax on property only. The true purpose of the statute is merely to fix the situs of personal property, and to designate the particular place within the state where such property is to be taxed. In this country the power of taxation is exercised by the state "upon the assumption that an equivalent is rendered to the taxpayer in the protection of his personal property, in adding to the value of such property or in the creation and maintenance of public conveniences in which he shares; such, for instance, as roads, bridges, sidewalks, pavements, and schools for the education of his children. . . . It is often said that protection and payment of taxes are correlative obligations." Union Refrigerator Transit Co. v. Kentucky, 199 U. S. 194, 202, 50 L. ed. 150, 153, 26 Sup. Ct. Rep. 36, 4 Ann. Cas. 493.

The power to tax is an incident of sovereignty and conferred upon the law-making branch of the government as a part of its general power.

But "while the mode, form, and extent of taxation are, speaking generally, limited only by the wisdom of the legislature, that power is limited by the principle inhering in the very nature of constitutional government; namely, that the taxation imposed must have relation to a subject within the jurisdiction of the taxing government." Louisville & J. Ferry Co. v. Kentucky, 188 U. S. 385, 396, 47 L. ed. 513, 518, 23 Sup. Ct. Rep. 463. Or, as was said by this court in a recent case (Martin v. Burleigh County, 38 N. D. 373, 165 N. W. 524): "Jurisdiction for taxing purposes must be dependent either upon a physical location of the property of such a character as to give to it a degree of permanency warranting the same treatment of the property as that accorded to all other property within the state, or it must be justified by the legal domicil of the owner being within the state." And it has been said by a high authority that while the legislative power extends over everything, whether it be person, property, possession, franchise, privilege, occupation or right, that "persons and property not within the territorial limits of a state cannot be taxed by it;" and that "a state can no more subject to its power a single person, or a single article of property, whose residence or legal situs is in another state, than it can subject all the citizens or all the property of such other state to its power." Cooley, Taxn. 2d ed. pp. 55, 159. See also Louisville & J. Ferry Co. v. Kentucky, supra. The limitations upon the state taxing power result from the distribution of power ordained by the Constitution. And "the application to the states of the rule of due process relied upon comes from the fact that their spheres of activity are enforced and protected by the Constitution, and therefore it is impossible for one state to reach out and tax property in another without violating the Constitution; for where the power of one ends, the authority of the other begins." And "the limitations of the Constitution are barriers bordering the states and preventing them from transcending the limits of their authority and thus destroying the rights of other states, and at the same time saving their rights from destruction by the other states, in other words, maintaining and preserving the rights of all the states." United States v. Bennett, 232 U. S. 299, 306, 58 L. ed. 612, 616, 34 Sup. Ct. Rep. 433. Taxation without jurisdiction has been held to be a violation of the 14th amendment. This is so, whether it involves a property tax or a license tax. Provident Sav.

Life Assur. Soc. v. Kentucky, 239 U. S. 103, 60 L. ed. 167, L.R.A. 1916C, 572, 36 Sup. Ct. Rep. 34.

These rules apply to all taxes imposed by a state upon property. They apply to both tangible and intangible property. There is no great difficulty in understanding the rules; the difficulty arises in applying them. Obviously, it is more difficult to apply them in dealing with intangible than in dealing with tangible property. The actual physical situs of tangible property is readily ascertainable. This is not so with intangible property. Property of the latter class is usually held secretly, and, with the exception of shares of corporate stock and obligations secured by recorded instruments, such as mortgages or trust deeds, there is ordinarily no method by which the existence or ownership thereof may be ascertained. The statutory provision under consideration applies to intangible property. Its purpose was to fix the situs of such property for purposes of taxation.

It has been the tendency of the modern decisions in dealing with intangible property to apply thereto the maxim, *mobilia sequuntur personam* (movables follow the person), and to hold that such property has its situs and is taxable only at the domicil of the owner. This maxim, however, is only a presumption, or rather a fiction of the law, and must yield when contrary "to the logic and policy of the state," and the demonstrated "fact of actual control elsewhere." Blackstone v. Miller, 188 U. S. 189, 205, 47 L. ed. 439, 444, 23 Sup. Ct. Rep. 277; Liverpool Ins. Co. v. New Orleans, 221 U. S. 346, 354, 55 L. ed. 762, 767, L.R.A.1915C, 903, 31 Sup. Ct. Rep. 550. The Supreme Court of the United States has frequently been called upon to determine whether property sought to be so taxed had a situs within the state so as to confer jurisdiction to impose a tax. In considering these questions, it has repeatedly recognized a distinction between tangible and intangible property. Thus, it has held that a tax imposed by the state of the owner's domicil upon tangible personal property which has acquired a permanent situs in another state is taking property without due process of law (Delaware, L. & W. R. Co. v. Pennsylvania, 198 U. S. 341, 49 L. ed. 1077, 25 Sup. Ct. Rep. 669; Union Refrigerator Transit Co. v. Kentucky, 199 U. S. 195, 50 L. ed. 150, 26 Sup. Ct. Rep. 36, 4 Ann. Cas. 493); but that the state of the owner's domicil may legally impose taxes upon shares of stock owned by him in a

foreign corporation which holds all of its property and does all of its business in another state (Hawley v. Malden, 232 U. S. 1, 58 L. ed. 477, 34 Sup. Ct. Rep. 201, Ann. Cas. 1916C, 842). And that deposits in a bank in another state, where the depositor carries on a business from which the deposits are derived, and belonging to the depositor but not used by him in the business, are subject to a tax against him in the city of his residence, even though such deposits are subject to a tax in the state where the business is carried on (Fidelity & C. Trust Co. v. Louisville, 245 U. S. 45, 62 L. ed. 145, L.R.A.1918C, 124, 38 Sup. Ct. Rep. 40). No good purpose would be subserved by attempting to analyze or even to harmonize the different decisions of the United States Supreme Court on this subject. Regardless of any inconsistency or apparent conflict, the cases all recognize the correctness of the general rule that the power of a state to tax is limited to persons or subjects within its jurisdiction, or over which it can exercise some dominion. Louisville & J. Ferry Co. v. Kentucky, 188 U. S. 385, 47 L. ed. 513, 23 Sup. Ct. Rep. 463. In other words, the state imposing a tax upon property, either tangible or intangible, must have some jurisdiction over the particular object or subject sought to be taxed. If there is no jurisdiction, no power of taxation exists. But if the jurisdictional conditions are present, the state has the power to impose taxes. And in dealing with intangible property, the state may, as against its residents, invoke the fiction, *mobilia sequuntur personam,* even though the actual control of the intangible property be elsewhere. Kidd v. Alabama, 188 U. S. 730, 732, 47 L. ed. 669, 672, 23 Sup. Ct. Rep. 401; Fidelity & C. Trust Co. v. Louisville, 245 U. S. 45, 62 L. ed. 145, L.R.A.1918C, 124, 38 Sup. Ct. Rep. 40; Hawley v. Malden, 232 U. S. 1, 58 L. ed. 477, 34 Sup. Ct. Rep. 201, Ann. Cas.1916C, 842. On the other hand, the state may refuse to recognize the maxim and impose taxes upon intangible property which in fact has a situs within the state and enjoys the protection of its laws, even though such property is owned by a nonresident. In such cases "the legal fiction expressed in the maxim, *mobilia sequuntur personam,* yields to the fact of actual control elsewhere. And in the case of credits, though intangible, . . . the control adequate to confer jurisdiction may be found in the sovereignty of the debtor's domicil. The debt, of course, is not property in the hands of the debtor; but it is an obligation of the debtor

and is of value to the creditor because he may be compelled to pay; and power over the debtor at his domicil is control of the ordinary means of enforcement." Liverpool & L. & G. Ins. Co. v. New Orleans, 221 U. S. 346, 354, 55 L. ed. 762, 767, L.R.A.1915C, 903, 31 Sup. Ct. Rep. 550. See also Corry v. Baltimore, 196 U. S. 466, 49 L. ed. 556, 25 Sup. Ct. Rep. 297.

It is contended by the attorney for the respondents that the legislature intended to impose a liability for taxes, and render all negotiable instruments, obligations, and credits arising from business done in this state subject to taxation here. And it is contended that loans made by nonresidents upon applications submitted to and approved by them in another state, or loans purchased by them from banks or persons engaged in the mortgage loan business in North Dakota, are subject to taxation in this state. Leaving constitutional consideration on one side, and expressing no opinion as to whether the legislature could, without violating the constitutional provisions relating to freedom of contract and interstate commerce, impose such liabilities upon commercial transactions between residents of this state and residents of other states, it is plain that the legislature has manifested no intent to do so. The purpose of the statute under consideration was to fix the situs of personal property for the purposes of taxation. The purpose of the amendment was to fix the situs of property which had formerly escaped taxation, to the end that the burden of taxation might be laid equally upon all those who have acquired and own property in this state. And to that end, the legislature provided that nonresidents who are engaged in business in the state shall pay a tax corresponding to that which is exacted from one of its own citizens. And that negotable instruments, credits, and obligations arising from business done by such nonresidents shall be assessable *"at the business domicil of the said nonresident, his agent, or representative."* Manifestly, it was not the purpose of the legislature to impose taxes upon every obligation or debt owed by citizens of North Dakota to residents of other states, but to impose such taxes only upon such credits and obligations as have arisen and have been derived by one who is conducting a business in this state. In other words, the legislature sought to fix the situs of intangible property, arising from business regularly conducted

in this state by a nonresident, at the business domicil of the owner, or the domicil of his agent or representative in the state.

With respect to what obligations or credits the legislature had in mind as having arisen from business done in this state, the very language of the statute indicates that the legislature did not intend to invent or adopt any new definition, or put into force any new idea as to what constitutes "doing business." The direction of the statute is that the obligations and credits to be taxed shall have arisen in the course of the business transacted by one who has a business domicil in the state, or some authorized resident agent or representative therein.

The term, "doing business," has been the subject of numerous judicial decisions; and while the decisions are by no means harmonious, the term has, nevertheless, acquired a more or less well-settled meaning. No good purpose would be subserved by entering into an extended discussion of the many authorities dealing with the question of what constitutes "doing business." Ordinarily, "the term 'business' . . . means an established business, either in connection with or apart from some business that had its domicil in another state. 'Doing business' . . . is maintaining an office and having capital invested and carrying on a regular business; that is, maintaining an office and having a capital invested and carrying on a regular business in the state." 5 Thomp. Corp. 2d ed. § 6670. The Supreme Court of the United States has held that where a resident of one state sends a note into another state where it is discounted, such transaction does not constitute "doing business" within the state from which the note was sent. Bamberger v. Schoolfield, 160 U. S. 190, 40 L. ed. 374, 16 Sup. Ct. Rep. 225. It has also held that the mere continuance by a foreign insurance company of the obligation of existing policies held by residents of a state, together with the receipt of renewal premiums thereon at the company's home office in another state, does not constitute transaction of business, so as to authorize the state where the policy holder resides to impose a privilege or license tax upon the company. Provident Sav. Life Assur. Soc. v. Kentucky, 239 U. S. 103, 60 L. ed. 167, L.R.A.1916C, 572, 36 Sup. Ct. Rep. 34. The authorities seem agreed that where a corporation domiciled in one state purchases securities or receives applications and makes loans through a broker resident in another state, such transactions do not constitute doing business in the state of the broker's

residence, where the securities purchased are delivered, and the loans are made payable, to the corporation at its domicil. See 5 Thomp. Corp. 2d ed. § 6670. It is the duty of this court to ascertain and give effect to the intention of the legislature as expressed in the law. In ascertaining such intention, "words and phrases are construed according to the context and approved usage of the language; but technical words and phrases, and such others as have acquired a peculiar and appropriate meaning in law, . . . are to be construed according to such peculiar and appropriate meaning or definition." Comp. Laws 1913, § 7325. And in the absence of anything from which a contrary intent may be gathered, we must assume that when the legislature uses the term, "doing business" or "business done," it uses it in the sense in which it is used by the courts and legislatures of the country.

It is strenuously asserted by counsel for the relators that the power to impose a tax upon obligations evidenced by promissory notes and other written instruments exists only in cases where the owners reside, or the instruments themselves are, within the borders of the taxing power. Although there is certain language used in some of the authorities justifying the contention made, it is difficult to see any logical reason on which the contention can rest. It is true that, "by a tradition which comes down from more archaic conditions," the debt is deemed inseparable from the paper which declares and constitutes it. Blackstone v. Miller, 188 U. S. 189, 47 L. ed. 439, 23 Sup. Ct. Rep. 277. This, however, is only a legal theory and one which the legislature may modify or abrogate when it deems necessary or desirable. And, as has been stated, a legal fiction or theory cannot deprive a state of jurisdiction to tax where a sufficient jurisdictional basis does, in fact, exist. While promissory notes are deemed property in the sense that they are subject to purchase and sale, the instruments themselves are, as between creditor and debtor at least, in fact merely evidence of the debt. A promissory note and the mortgage securing it may be destroyed, but the obligation evidenced by the instruments still remains until discharged. If all promissory notes and mortgages now existent, formerly executed by citizens of this state, were destroyed, the obligations on the part of the makers, and the rights of the owners and holders to enforce such obligations, would not be altered in the least. The evidence of the obligations would be nonexistent, but the obligations

themselves would remain and could be enforced as before. In other words, the debt or obligation itself is the primary thing, and remains, even though the evidence of its existence is destroyed. The credit is one thing, the evidence of it is another thing. "What gives the debt validity? Nothing but the fact that the law of the place where the debtor is will make him pay. It does not matter that the law would not need to be invoked in the particular case. . . . So, again, what enables any other than the very creditor in proper person to collect the debt? The law of the same place." Ibid. The thing of value, the enforceable obligation, is here, regardless of where the evidence of the obligation may be found. We are therefore of the opinion that this state has the power which it has sought to exercise by the statute under consideration, to wit, to impose taxes upon credits and obligations owned by a nonresident who is conducting a business in this state, and which credits and obligations are owing to him by residents of this state, and have arisen from the business which is being conducted by such nonresident in this state. Manifestly, such obligations and credits are subjects of value to the owner. In many instances they constitute property of the very highest value. Under the statute, obligations and credits to be taxed must have arisen in this state from business transacted here under the protection of our laws, and payable by persons domiciled within this state. The rights of the creditor must be enforced here. The laws of this state protect the obligation and enable the creditor to enforce it against the debtor, thereby making it valuable. And as tangible property is taxable where it has a permanent situs, because the sovereign state where it is located can exercise control over it and thus afford it the protection for which the tax is exacted, it seems that in cases like those which fall within the provisions of the statute before us, the state of North Dakota, which is the domicil of the debtor and has control over him, also has control over the obligations sought to be taxed. Nor do we deem the physical presence of the instruments of indebtedness within this state a jurisdictional prerequisite. We do not believe that a nonresident who is engaged in business in this state and acquires and owns valuable obligations, credits, and securities which have arisen from such business, can escape taxation merely by removing the evidence of such debts from this state. "Persons are not permitted to avail themselves for their own benefit of the laws of a state in the conduct of

business within its limits, and then to escape their due contribution to the public needs through action of this sort, whether taken for convenience or by design." Bristol v. Washington County, 177 U. S. 133, 139, 44 L. ed. 701, 704, 20 Sup. Ct. Rep. 585.

But inasmuch as it appears that the corporation relators had their business domicil in the state of Minnesota; that they had no established agencies in this state; that all applications for loans were received by them and passed upon at their home offices in Minnesota; that such loans were made payable in the state of Minnesota; that the relators kept no funds within the state of North Dakota for investment, but that the amount of each loan was transmitted to the borrower by draft or cashier's check drawn upon a Minnesota bank,—we are entirely satisfied that such transactions do not constitute "business done" in North Dakota within the terms of the statute under consideration.

It therefore follows that the securities held by the different corporation relators are not subject to taxation under the statute. The respondents are, therefore, acting in excess of and without authority of the law in attempting to impose taxes thereon.

It also follows that some of the securities held and owned by the relator Wheeler fall within the rule just stated. But it is not entirely clear from the facts alleged by the relator and admitted by the respondents that all of his securities fall within the rule. It may be that some of his securities arose in a loan business regularly conducted by him through an agent residing in this state, and come within the purview of the statute. If this is so, the mere fact that he has removed the securities to his home in Minnesota will not deprive the respondents of the right to impose taxes thereon. But, as already stated, we are unable to determine what the fact is with regard thereto, and whether any of Wheeler's securities are subject to taxation in this state.

A writ will issue in harmony with the views expressed in this opinion.

Robinson, J. (specially concurring and in part dissenting). This suit challenges the validity of chapters 229 and 230, Laws of 1917. Chapter 229 is to the effect that no nonresident, either by himself or agent, shall do business within the state without paying a tax the same as citizens of the state, and that all bills receivable, obligations, and credits arising from business done in this state are assessable within

the state and at the business domicil of the nonresident or his agent. The term "credits" means and includes every claim or demand for money due or to become due, and all demands secured by deeds or mortgages due or to become due. Comp. Laws, § 2074.

Chapter 230 provides that all moneys and credits must be listed for taxation, and that, in lieu of all other taxes, the same shall be subject to an annual tax of 3 mills on each dollar of the fair cash value. That the taxes paid under such levy shall be apportioned one sixth to the state; one sixth to the county; one third to the general fund of the city, village, or township; and one third to the school district.

These two chapters may be considered as twins. They were enacted at the same time and for the same purpose. They stand or fall together. The real purpose of each chapter was to levy a 3-mill tax on the credits of nonresidents. What a person does by another he does by himself. Hence, when a resident agent does represent a nonresident in carrying on a farm, a loan agency, or any business, the property, credits, notes, and mortgages obtained, held, and used by him have a local situs and domicil and are subject to taxation. Such has always been the law of this state.

Before the passage of the two acts, nonresident property of every kind, including money and credits having a situs or domicil in the state, was, and it still is, subject to assessment and taxation the same as the property of residents. Hence, it must be that the real purpose of those acts was to levy a 3-mill tax on the credits of all nonresidents when secured on lands in this state.

The relators show that they do not reside in this state and they carry on no business within the state, but they do purchase notes and mortgages secured on lands in the state, and defendants show a purpose to assess such notes and mortgages and to levy thereon a tax of 3 mills on the dollar. Now, as held by the United States Supreme Court, all property in debts belong to the creditors to whom they are payable, and follow their domicil wherever they may be. Debts can have no locality aside from the parties to whom they are due. This principle might be stated in many different ways and supported by citations from numerous adjudications; but no number of authorities, and no form of expression, could add anything to its obvious truth.

So far as debts are held by nonresidents of the state, they are prop-

erty beyond the jurisdiction of the state. State Tax on Foreign-held Bonds, 15 Wall. 300, 21 L. ed. 179. No state has jurisdiction to levy taxes on property, money, or credits which are held and used in another state.

In regard to the levying of taxes the Constitution provides thus: The legislative assembly shall provide for raising revenue sufficient to defray the expenses of the state for each year, not to exceed in any one year 4 mills on the dollar of the assessed valuation of all taxable property in the state, and a sufficient sum to pay interest on the state debt. § 174.

No state tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same, to which only it shall be applied. § 175.

The debt of any county, township, city, town, or school district shall not exceed 5 per cent of the assessed valuation of the taxable property therein. § 183.

Under the Constitution each political subdivision must levy its own taxes and impose and bear its own burdens. It is for the state to levy its own tax, to make each levy for a specified public purpose, and to limit the levies to 4 mills on the dollar and the interest on the public debt. Obviously, there is nothing in the act to show the object of the 3-mill levy. The act does not state the object of the 3-mill levy or show that it is for a public purpose. For the several reasons the levy is clearly void. The sum total of all levies for the necessary expenses of the state must not exceed 4 mills on the dollar in any one year. This limitation it would be quite impossible to fix and determine if the state might levy on all the different classes of property 3 mills or 3 cents on the dollar, and if the state may discriminate and levy 3 mills on credits, why not 3 cents on other classes of property?

It seems we are having altogether too much tinkering with tax legislation, and it is done for the purpose of raising excessive revenues. The only safe course is to assess and tax all property by uniform rule according to its value in money, and in every law or resolution imposing a tax to state distinctly the object of the same.

The conclusion is that said chapters 229 and 230 are void in so far as they provide for the levy of a 3-mill tax on money and credits, and in so far as they provide for the assessment of money or credits not

owned or held or used in this state. Hence, it is ordered that in the making of assessments and tax levies under said chapters, the defendants and all persons acting under them shall conform to this decision, and that the relators shall not be required to list for assessment and taxation any property, money, or credits of nonresidents, only such as may be held and used in this state regardless of the fact that the same may be secured on property within the state.

GRACE, J. (concurring in part, dissenting in part). We concur in the opinion of the majority in so far as it holds that moneys and credits of the citizens of the state of North Dakota are taxable according to the provisions of chapter 229 of the 1917 Session Laws.

We dissent from the majority opinion wherein it holds that the relators and those similarly situated who are nonresidents and who are the owners and holders of mortgages, obligations, accounts, and contracts, etc., which are obligations owing by the citizens or residents of this state to the residents and citizens or corporations of other states, are not taxable by the proper tax officials of this state, in the same manner and to the same effect as moneys, obligations, and credits, etc., of the citizens and residents of this state are subject to the tax provided by chapter 229 of the 1917 Session Laws.

As it appears to the writer, the result arrived at by the majority with reference to intangible property of nonresidents is clearly contrary to the major portion of the reasoning of the majority of the court. The greater part of the reasoning of the majority, as expressed in their opinion, would be logical if the result as to nonresidents were just the reverse of that at which the majority opinion arrives.

The first main question to be considered, stated in simple manner, is: "Are the plaintiffs transacting business within the state of North Dakota?" The revenue statute under consideration is part of chapter 229 of the 1917 Session Laws. The same reads as follows: "Except as otherwise provided in this chapter, personal property shall be listed and assessed in the county, town or district where the owner or agent resides; the capital stock and franchises of corporations and persons shall be listed in the county, town or district where the principal office or place of business of such corporation or person is located in this state; and if there be no principal office or place of business in

this state where such corporation or person transacts business, then personal property pertaining to the business of a merchant or manufacturer or corporation shall be listed in the town or district where his business is carried on. The taxation and revenue laws of this state shall apply with equal force to any person or persons representing in this state business interest that may claim domicil elsewehere, the intent and purpose being that *no nonresident, either by himself or through any agent* shall transact business within the state without paying to the state a corresponding tax with that exacted of its own citizens; and all bills receivable, obligations or credits arising from business done in this state are hereby declared assessable within this state, and at the business domicil of said nonresident, his agent, or representative; provided, however, no insurance company paying the state a percentage of its gross premiums received in the state shall be subject to the provisions of this act."

It is not difficult to ascertain the intent of the legislature in passing the above law. In fact the legislature has declared its intent which is contained in the body of the law. The legislature evidently did this in order to save the court the trouble of trying to ascertain what the intent of the legislature was, in the passage of such law, and for the further purpose of guiding the court in ascertaining the intention of the legislature. Many laws are passed by legislatures in which no reference is made as to what the intent of the law really is, it being left to the court of final resort to finally determine the intent of the law from the language used therein; but the legislature has clearly expressed the intent of the law under consideration.

The law under consideration, as passed by the legislature, has not its parts grammatically and logically arranged, but this is a fault common to many legislative enactments; but notwithstanding the poor grammatical arrangement of the law under consideration, when the whole law is read, the intent thereof is exceedingly clear, and would be so even though the legislature had not declared the intent.

The majority opinion clearly declares the intent of the law, and then arrived at a result which appears to us directly contrary to the intent of the law. The majority opinion uses the following language with reference to the intent of the amendment:

*"The intent and purpose of the amendment, as declared by the legis-*

*lature, was to require nonresidents transacting business within the state to pay a tax corresponding to that exacted from citizens of the state."*

We quote further from the majority opinion to support such intent of the legislature in enacting said law:

"At the outset, it is well to note that the avowed purpose of this statute under consideration *is to fix the situs of personal property for the purpose of taxation.*

"The original section provides that personal property should be listed where the owner or agent resides, and that the capital stock and franchise of corporations and persons should be listed where the principal office or place of business of the corporation is located; and if there is no principal office or place of business in the state that then personal property pertaining to the business of a merchant or manufacturer or corporation should be listed where the business is carried on. The amendment merely extended *these provisions and made the statute applicable to nonresidents transacting business in the state. The intent and purpose of the amendment as declared by the legislature was to require nonresidents transacting business within the state to pay a tax corresponding to that exacted from citizens of the state. And in that connection and to that end it provided that 'all bills receivable, obligations or credits arising from business done in this state are (hereby declared)assessable within the state and at the business domicil of the said nonresident, his agent or representative.'* Obviously, the legislature had no intention, by the enactment of this statute, to impose a privilege or occupation tax. The legislature was dealing with a tax upon property only. The true purpose of the statute is merely to fix the situs of personal property and to designate the particular place within the state where such property is to be taxed. . . .

"It is strenuously asserted by counsel for the relators that the power to impose a tax upon obligations evidenced by promissory notes and other written instruments exists only in cases where the owners reside or the instruments themselves are within the borders of the taxing power. Although there is certain language used in some of the authorities justifying the contention made, it is difficult to see any logical reason on which the contention can rest. It is true that 'by a tradition which comes down from more archaic conditions' the debt is deemed

inseparable from the paper which declares and constitutes it. Blackstone v. Miller, 188 U. S. 189, 47 L. ed. 439, 23 Sup. Ct. Rep. 277. This, however, is only a legal theory and one which the legislature may modify or abrogate when it deems necessary or desirable. *And, as has been stated, a legal fiction or theory cannot deprive a state of jurisdiction to tax where a sufficient jurisdictional basis does, in fact, exist.* While promissory notes are deemed property in the sense that they are subject to purchase and sale, the instruments themselves are, as between the creditor and debtor at least, *in fact merely evidence of the debt.* A promissory note and the mortgage securing it may be destroyed, *but the obligation evidenced by the instruments still remains until discharged.* If all promissory notes and mortgages now existent formerly executed by citizens of this state were destroyed, *the obligations on the part of the makers and the rights of the owners and holders to enforce such obligations would not be altered in the least.* The evidence of the obligation would be nonexistent, but the obligations themselves would remain and could be enforced as before. In other words, the debt or obligation itself is the primary thing, and remains even though the evidence of its existence is destroyed. The credit is one thing, the evidence of it is another thing. What gives the debt validity? Nothing but the fact that the law of the place where the debtor is will make him pay. It does not matter that the law would not need to be invoked in the particular case. . . . So, again, what enables any other than the very creditor and proper person to collect the debt? The law of the same place. Ibid. *The thing of value, the enforceable obligation, is here regardless of where the evidence of the obligation may be found.* We are therefore of the opinion that this state has the power which it has sought to exercise by the statute under consideration, to wit, to impose taxes upon credits and obligations owned by a nonresident who is conducting a business in this state, and which credits and obligations are owing to him by residents of this state, and have arisen from the business which is being conducted by such nonresident in this state. Manifestly such obligations and credits are subjects of value to the owner. In many instances they constitute property of the very highest value. Under the statute, obligations and credits to be taxed must have arisen in this state from business transacted here under the protection of our laws and payable by persons domiciled within this state.

40 N. D.—14.

The rights of the creditor must be enforced here. The laws of this state protect the obligation and enable the creditor to enforce it against the debtor, thereby making it valuable. And as tangible property is taxable where it has the permanent situs, because the sovereign state where it is located can exercise control over it, and thus afford it the protection for which the tax is exacted, it seems that in cases not like those which fall within the provisions of the statute before us the state of North Dakota, *which is the domicil of the debtor and has control over him, also has control over the obligations sought to be taxed.* Nor do we deem the physical presence of the instrument of indebtedness within this state a jurisdictional prerequisite. *We do not believe that a nonresident who is engaged in business in this state and acquires and owns valuable obligations, credits and securities which have arisen from such business, can escape taxation merely by removing the evidence of such debts from this state."*

The writer has quoted most extensively from the opinion of the majority, and, after reading and considering the language thus expressed in the majority opinion, cannot escape the conviction that the majority opinion conceives it was the intention to require nonresidents transacting business in this state to pay a tax corresponding to that exacted from citizens of the state; that such tax may be upon intangible property; that such intangible property may consist of notes and mortgages on land within this state and owned and held by persons without the state, and that the situs of such intangible property for the purpose of taxation is, in fact, the place where the debtor resides though the evidence of the debt is held without the state; that the situs of such intangible property for the purpose of taxation is in the state that has control over both the debtor and its obligation and the laws of such state, which protect the obligations and enable the creditor to enforce it against the debtor.

All these concessions are really, in fact, made by the majority opinion, and such concessions must necessarily be made because they are true, and we see that when such concessions are made the result arrived at by the majority opinion, as to nonresidents, cannot logically be reached.

There is no question arising in this case concerning whether or not the relators do business in this state. They, in their petitions and

affidavits, admit they are doing business in this state, and they, in effect, admit they are doing a regular business in this state; and this being true, the notes, obligations, or mortgages arising in this state owing from debtors in this state to them, even under the reasoning of the majority, are taxable in North Dakota.

The majority opinion seems to rest upon the theory that the relators in question were not doing business within this state. We see no other way the majority can avoid the logical result of their own reasoning except to base the reason for the result they reached upon the theory or claim that the relators are not doing business in the state of North Dakota or are not conducting a regular business. This theory or this claim is entirely overcome and dissipated by the express admission of the relators. E. J. Wheeler, in his affidavit, states as follows: "Affiant further says that he is engaged in the *real estate and loaning business,* and in the purchase and sale of mortgages, bonds, credits, and other securities held and owned by him until collection thereof; *that at times in the furtherance of his lawful occupation and business* he advances and loans to citizens of the state of North Dakota moneys and checks therefor, notes, bonds, obligations, and other evidence of debt secured by mortgages upon real and personal property, and at times purchases the same, and for that purpose at times employs an agent in the state of North Dakota to take applications for loans, cause to be executed notes and mortgages, and forwards the same to petitioner, who forwards to the agent the moneys for said loans, which is by said agent delivered to the borrower within the state of North Dakota, which said promissory notes, mortgages, and credits, however, are not held in the state of North Dakota, but in the actual possession of the petitioner in the state of Minnesota."

It is not necessary to quote the affidavit of Wheeler further, as it clearly shows that he is engaged in transacting a regular business in the state of North Dakota, where this conclusion necessarily follows from his admission. He also shows, further, that the bonds, notes, negotiable instruments, and mortgages are in different and various counties of the state of North Dakota; that the property securing such evidence of debt is located in various taxing districts of the state of North Dakota and subject to the particular jurisdiction where levies are and have been made for the purpose of providing revenue for said

particular taxing district, and to meet the current expenses of said taxing district. We see, therefore, that the affiant, who is one of the petitioners and relators, concedes that the property which secures these obligations is located in various taxing districts which have jurisdiction over such property. If it should be found that the obligations which said property secures are assessable as intangible property, *it will necessarily have to be conceded that the taxing districts where the property is located which secures such obligations will have jurisdiction to assess such intangible property.*

The other petitioners and relators in this proceeding are, the Capital Trust & Savings Bank, Merchants Trust & Savings Bank, Northwestern Trust Company, Minneapolis Trust Company, Minnesota Loan & Trust Company, Wells-Dickey Company, Hennepin Mortgage Company, Gould-Stabeck Company, and Drake-Ballard Company. These are all Minnesota corporations, and each have a business office or place either in St. Paul or Minneapolis, Minnesota.

In the brief of intervening relator is substantially the following statement of facts: "The business of each of them (referring to the above corporations) consists among other things in loaning money on promissory notes secured by mortgages on farm lands in Minnesota, North Dakota, and other states in the Northwest. *They each hold a large amount of such notes secured by mortgages on farm lands in various counties of the state of North Dakota.* The method of making such loans is illustrated by a practice of the intervener, Capital Trust & Savings Bank, and is as follows: Persons or corporations living in the state of North Dakota and engaged in the banking, loan, or real estate business and having applications for loans made to them by owners of farm lands in the state, submit such application to the intervener. The applications are in writing and are sent by mail to the intervener's office in St. Paul for its consideration. In some cases the intervener accepts the applications and in other cases they are rejected. If it desires to make the loan applied for, the notes and mortgages are executed by the borrower, who is usually a resident of North Dakota. The loan broker in North Dakota through whom the application is made attends to the execution and recording of the papers, and when they are complete they are sent by mail to the intervener at his office in St. Paul for its examination and approval. The papers are examined in St. Paul; the abstracts of

titles are passed on at St. Paul and the loan is accepted or rejected in St. Paul. If the papers are approved the money loaned is transmitted by the intervener at St. Paul to the loan broker through whom the application is received, the funds being transmitted by draft or cashier's check drawn on funds in the state of Minnesota. The intervener has no agent acting for it in such matters in North Dakota, and the loan brokers have no authority to represent the intervener and receive their commission and compensation from the borrower and act as the borrower's agent. After the loan is made, the notes, mortgages, and other papers are kept by the intervener at his office in St. Paul so long as he owns the same. The notes are, in all cases, made payable at the office of the intervener in the city of St. Paul. Occasionally, if the intervener purchases mortgages from banks or persons engaged in the mortgage loan business in North Dakota, and in such cases the papers relating to the mortgage loan are sent to the intervener at his office in St. Paul for examination and approval, and if accepted, the purchase price is transmitted from St. Paul to North Dakota in the same manner as where the loan is made by the intervener in the first instance. The intervener does not maintain any agent or place of business in the state, and the mortgage notes do not arise out of any business transacted in the state of North Dakota, unless making loans in the manner set forth constitutes doing business in that state. The methods followed by all the interveners are substantially the same. The interveners, other than the Capital Trust & Savings Bank, have heretofore complied with the Foreign Corporation Act of the state of North Dakota; but notwithstanding they have received licenses to do business in that state, they have not, in fact, transacted any business in the state unless the making of mortgage loans stated constitutes doing business in the state."

This statement of facts, without need of further analysis, clearly shows and demonstrates that each of the interveners is engaged in business in the state of North Dakota. In the statement of facts, it is admitted that *"they each hold a large amount of such notes secured by mortgages on farm lands in various counties of the state of North Dakota."* This statement, in effect, is equivalent to stating that they each do a large business in the state of North Dakota by loaning money to the residents of North Dakota and taking mortgages on their farms. They have, with one exception, complied with the Foreign Corporation

Act of this state and received their licenses to do business,—all of which indicates the transaction of a regular business in the state of North Dakota. The statement of facts also shows that a large part of the business is done in North Dakota. The statement of facts referred to this matter and to the making of a loan, and states as follows: "If it desires to make the loan applied for, the notes and mortgages are executed by the borrower, *who is usually a resident of North Dakota,* and it is stated that the method of making such loan is illustrated by the practice of the Capital Trust & Savings Bank."

The quotation last made is with reference to the Capital Trust & Savings Bank, so that it would appear that a large part of the business of the corporation is that of making farm loans in the state of North Dakota. In fact, it must, we think, be conceded that all of the corporations above referred to, from their own statement of facts, do a large farm loaning business in the state of North Dakota. Assuming that it appears that such corporations do a large business in the state of North Dakota, the result arrived at by the majority opinion has no logical support, and the result arrived at does not follow from the major part of the reasoning of the majority opinion. The result arrived at by the majority, as it appears to us, is in direct conflict with their reasoning as we have set it forth in this opinion, and cannot rest upon the proposition that the intervening relators are not doing business in the state of North Dakota, because their statement of facts, we believe, shows that they are doing business in the state of North Dakota. It being, as we believe, shown that the relators are doing business in the state of North Dakota, as the words, "doing business," are usually understood, and applying to such words the ordinary and common signification, and it being further conceded that the obligation is, in fact, the thing of value, and the notes and mortgages but the evidence of the value, and that the power exists in this state to enforce such obligations to which power the creditor may resort whenever he is entitled to a remedy, it must be apparent and it ought to be held that such obligation is taxable as intangible property by virtue of the statute under consideration. Such, we believe, was the intent of the legislature, and such intent, when ascertained and especially when expressly declared, should govern this court. The plain intent of the legislature should be carried into effect.

There can be no question but what the state has jurisdiction to impose a tax under consideration upon the intangible property, in this proceeding. The intangible property is located within this state. That is, the obligation, the thing of value, is within this state. The debtor resides within this state. The power to enforce the obligations under consideration is within this state. The intangible property, the obligation, is within this state. Though the evidence of such obligation may be without the state, the obligation, the thing of value, the credit being within this state, the state has jurisdiction to apply taxing laws to such obligation and credits in the same manner as it applies the taxing laws to similar obligations and credits of its own citizens. There can be no question about the state having jurisdiction over the intangible property under consideration and all similar intangible property.

The legislature has clearly declared the intent of the act in these words: *"The intent and purpose being that no nonresident, either by himself or through any agent shall transact business within the state without paying to the state a corresponding tax with that exacted of its own citizens."* [Laws 1917, chap. 229.]

It is clear from the above language that it is not necessary to have an agent in this state, for the law applies whether the business is done by the principal or through an agent; and the intent as expressed above clearly shows that if the business is done within this state so that an obligation exists in the state, then the power to tax such obligation exists in the state, to the same extent that a similar obligation is taxed as against a citizen of this state.

It may be well to examine upon what intangible property or credits are the citizens of the state of North Dakota subject to tax. When that is ascertained, then the nonresident must pay a corresponding tax upon similar intangible property. It must be conceded that the citizens of the state of North Dakota must pay the tax under consideration, upon every credit and upon all intangible property such as notes, mortgages, accounts, contracts, etc., which he owns. Any citizen who has any of such intangible property is subject to the tax under consideration, whether he is an individual, a corporation, or whether he does such business himself or through an agent. If this is true, then the nonresident who has similar property in this state, according to the expressed intent of such law, should pay a corresponding tax.

The question then is: Are notes and mortgages executed by citizens of this state to nonresidents, upon intangible property within this state, subject to the tax under consideration? It being conceded that such notes and mortgages are but the evidences of the obligation, and that the obligation is the thing of value; that the obligation exists within this state, the debtor resides within this state; the obligation to pay existing within this state; the power to enforce such obligation being within this state; it must follow that the intangible property under consideration and similarly situated must be within this state, and is therefore taxable within this state in the manner corresponding to that of similar intangible property taxed against the residents and citizens of this state. In other words, whatever intangible property a nonresident has within this state is taxable in the same measure as and correspondingly with similar property of a resident or citizen of the state.

This is the true measure of authority and power of the state to tax this kind of property. If the citizens of the state pay this tax upon a mortgage, note, or obligation which they own, then a similar tax must be paid upon a similar note, mortgage, or obligation which is owned by a nonresident.

It does not seem to us that there is any great difficulty in understanding this law, especially where the clear intent of the legislature is expressed, as we have before set forth. The measure of the liability of a nonresident who owns intangible property within this state to pay tax thereon is measured by the liability of a citizen or resident within this state in paying a tax upon similar intangible property.

As the majority opinion has not entered into a discussion of constitutional questions, we will not do so.