CAPITAL TRUST & SAVINGS BANK, a Corporation, et al., Appellants, v. GEORGE E. WALLACE, as Tax Commissioner of the State of North Dakota et al., Respondents.

(177 N. W. 440.)

**Taxation — moneys and credits tax — does not apply to foreign corporations not doing business in the state.**

Chapter 230 of the Session Laws of 1917, which provided for the taxation of moneys and credits at an annual flat rate of three mills on each dollar of the cash value, having been repealed by chapter 62 of the Session

Laws of the Special Session of 1919, the latter providing that the act should not be construed to invalidate or discharge any tax theretofore levied or assessed, it is held that the plaintiffs, in respect to the business described in the complaint, are not liable for the tax sought to be imposed.

Opinion filed March 13, 1920.

Appeal from District Court, Burleigh County, *J. M. Hanley,* Special Judge.

Reversed.

*Butler, Mitchell & Doherty (Miller, Zuger & Tillotson,* of counsel), for appellants.

The court has jurisdiction to entertain this cause and decide the matters in controversy. State v. Packard, 32 N. D. 301, 105 N. W. 666; State v. Taylor, 33 N. D. 76, 156 N. W. 561; State v. Hall, 35 N. D. 34, 155 N. W. 281; State v. Packard, 35 N. D. 298, 160 N. W. 150; State v. Packard, 168 N. W. 673.

The notes held by the relators, although secured by mortgages on North Dakota real or personal property, are not subject to taxation in North Dakota. State Tax on Foreign-held Bonds, 15 Wall. 300; Walker v. Jack, 88 Fed. 576; New Orleans v. Stempel, 175 U. S. 309.

"A debt due a nonresident of this territory from a resident of this territory, although secured by a mortgage upon real estate situated in this territory, is not subject to taxation in this territory." Territory v. Delinquent Tax Lists, 24 Pac. 182; State v. Scottish Am. Stg. Co. 76 Minn. 155; Holland v. Board of Comrs. 39 Pac. 575; Adams v. Colonial & U. S. Mortg. Co. 34 So. 482; Jack v. Walker, 96 Fed. 578, affirmed in 100 Fed. 1006; Hathaway v. Edwards, 85 N. E. 28; Com. v. Peebles, 119 S. W. 774; National Fire Ins. Co. v. Board of Assessors, 46 So. 117; General Electric Co. v. Board of Assessors, 46 So. 122; Board of County Comrs. v. Cutler, 3 Colo. 351; Goldgart v. People, 106 Ill. 29; Firesman v. Byrns, 69 Ind. 254; Com. v. Consolidated Casualty Co. 185 N. W. 508.

"Where the nonresident lender has no place of business or location or agent in the state, and accomplishes the loan beyond the limits of this state, the fact that negotiations for the loan were made by persons in this state, and it was secured by mortgage on property in this state,

does not subject it to taxation here." State v. Smith, 8 So. 294; Gold-gart v. People, 106 Ill. 25; Senour v. Ruth, 39 N. E. 946.

"The debt, therefore, if owned and controlled by one not a resident of the state, is not 'property in the state subject to taxation' as provided by the Revenue Act of 1891, but can be assessed only at the domicil or place of residence of the creditor without regard to the domicil of the debtor." Holland v. Silver Bow County, 39 Pac. 575.

*Wm. Langer,* Attorney General, and *F. E. Packard,* Assistant Attorney General, for respondents.

BIRDZELL, J.: This is an appeal from a judgment in favor of the defendants which was entered pursuant to an order sustaining a demurrer to a complaint. The action is one to enjoin the defendants from proceeding under certain tax laws to tax credits evidenced by promissory notes and mortgages owned by the plaintiffs on April 1, 1919. The plaintiffs allege that they are foreign corporations having their offices and places of business in the cities of St. Paul and Minneapolis, Minnesota; that the business of each of them consists in loaning money on promissory notes secured by mortgages on farm lands and, as to one plaintiff, by chattel mortgages on live stock; that on April 1, 1919, they held a large amount of such notes and mortgages; that none of the plaintiffs has established any place of business within the state of North Dakota nor has any office in this state; that loans have been made by them substantially in the following manner: Persons or corporations living within this state and engaged in the banking, loan, or real estate business, take applications for loans, submit them to the plaintiffs for consideration, and, if satisfactory to the plaintiffs, the loan is completed. The loan broker in North Dakota, to whom the application was made, attends to the execution of the necessary papers which are sent by him to the plaintiffs for their examination and approval. Upon approval, the money is forwarded by the plaintiffs to the loan broker, or, in some instances, deposited in Minnesota banks to the credit of the broker. The brokers receive their commissions from the borrower and act as his representative. The plaintiffs keep their notes and mortgages at their offices outside the state and that they keep no fund within the state for investment. Another method of acquiring securities is their purchase from banks or persons engaged in the mortgage loan

business.    The methods according to which the various plaintiffs handle loans on North Dakota property differ to some extent.    Some make loans exclusively in the manner hereinbefore described at length; others may mingle both that method and the purchase method; and still others acquire loans exclusively by purchase.

It will be noted that the facts stated above are substantially the same as the facts presented in State ex rel. Langer v. Packard, 40 N. D. 182, 168 N. W. 673.

The history of the legislation bearing upon the tax sought to be enforced against the plaintiffs is stated in full in the opinion of this court, filed concurrently herewith, in the case of Farwell, O. K. & Co. v. Wallace, ante, 173, 177 N. W. 103, and need not be repeated here.    Suffice it to say that it evidences two complete changes of legislative policy, the first relating to situs and the second to the desirability of the tax provided for.    The situs law, which was before this court in State ex rel. Langer v. Packard, supra, is completely changed so as apparently to make the determining factor either the domicil of the debtor, or the situs of the tangible property upon which the security is given, and this is again changed by the act of the special session of the legislature in 1919 which eliminates this criterion.    As to the tax itself, the special session of the legislature repealed the law which provided for the tax on moneys and credits, saying, however, "any tax heretofore levied or assessed under or by virtue of any of the tax laws of this state."    Laws of the Special Session of 1919, chap. 62, § 2.    It does not affirmatively appear that any tax has heretofore been levied or assessed under any of the tax laws of this state as to the credits owned by the plaintiffs and which were obtained in the manner heretofore indicated.    On the contrary, it rather appears that such taxes had not been assessed or levied up to the time of the institution of this suit, if not up to the time of the passage of the repealing law.    In view of the grave doubt as to whether the legislature actually intended by the repealing act to save taxes that were in litigation prior to assessment, which litigation was known to be pending when the repealing act was passed, and of the further fact of the distinct change in policy evidenced by the repeal, our decision in his case will be of little or no value as a precedent and we have determined merely to state the conclusion at which we have arrived, with a brief statement of the reason therefor.

Our conclusion is that the plaintiffs are not liable for the taxes involved in this litigation. The statute (Sess. Laws 1919, chap. 229) which defines the jurisdiction of the state to tax the property involved herein, makes the revenue laws applicable to "all property and business . . . though the owners . . . may have or claim domicil elsewhere." And it is provided that if the holder of credit obligations secured by property within the state has no residence in the state "the taxes shall be deductible upon such obligations in the hands of the debtor or his agent." The money and credit tax sought to be levied under chapter 230 of the Session Laws of 1917, does not purport to be a tax upon any business conducted in this state nor does it evidence any attempt to tax capital employed in any business as such. On the contrary, it attempts to seize upon the single fact of the domicil of the debtor or the presence of the mortgaged property within the state as the sole test of jurisdiction to tax. It does not segregate the interests of the mortgagor and mortgagee in the property. The mortgagor must still pay a tax on the mortgaged property valued without regard to the mortgage. So, under the statutes referred to, the owner of a credit, secured by property within the state, is rendered liable to the tax even though he never had any business relations whatsoever with the debtor whose residence and property are here. The fiction of *mobilia sequuntur personam* is responsible for a broad assertion of the lack of jurisdiction to tax a credit in the state of a debtor's domicil. See State Tax on Foreign-held Bonds, 15 Wall. 300, 21 L. ed. 179. But while this fiction has been compelled to yield to facts pointing to the necessity of equal taxation of those engaged in business within a sovereign state, the principle has never been so completely reversed so as to authorize the state to seize upon the sole fact of the residence of the debtor and the presence of his mortgaged property within it as determining the taxing jurisdiction of the state. We are satisfied that this cannot be done where it would render negotiable instruments in the hands of nonresident owners subject to tax in this state.

As in the case of Farwell, O. K. & Co. v. Wallace, ante, 173, 177 N. W. 103, decided simultaneously with the case at bar, relief is asked from the capital stock tax sought to be levied under chapter 222, Session Laws of 1919. In our opinion, under the facts alleged, the plaintiffs are entitled to the relief sought. See State ex rel. Langer v. Pack-

ard, 40 N. D. 182, 168 N. W. 673; and Farwell, O. K. & Co. v. Wallace, supra.

Being of this opinion, it follows that the judgment appealed from must be reversed. It is so ordered.

For reasons stated in a per curiam opinion filed concurrently herewith in an original application to this court, it is also ordered that the two interveners are entitled to the benefits of the judgment to be entered in the district court.

CHRISTIANSON, Ch. J., and ROBINSON, J., concur.

BRONSON, J., concurs in result.

GRACE, J. (concurring in the result). This case had its inception in an application to this court for an original writ of injunction to restrain the defendants from the collection of certain taxes upon certain personal property, to which more particular reference will hereinafter be made.

The case is one in which this court could assume original jurisdiction upon the authority of State ex rel. Linde v. Packard, 32 N. D. 301, 155 N. W. 666; State ex rel. Linde v. Taylor, 33 N. D. 76, L.R.A. 1918B, 156, 156 N. W. 561, Ann. Cas. 1918A, 583; State ex rel. Linde v. Hall, 35 N. D. 34, 159 N. W. 281; State ex rel. Linde v. Packard, 35 N. D. 298, L.R.A.1917B, 710, 160 N. W. 150; State ex rel. Langer v. Packard, 40 N. D. 182, 168 N. W. 673; State ex rel. Lofthus v. Langer Bank, 46 N. D. —, 177 N. W. 408.

The plaintiff, however, after an application to this court for such original writ, commenced an action in the district court of Burleigh county, before J. M. Hanley, Judge, acting as such on the written request of W. L. Nuessle.

The object of this action was to procure, from that court, an injunction permanently restraining the defendants from the collection of any of the tax, hereinafter referred to. A decision of this case will also dispose of the application for an original writ of injunction.

The defendants in the action, in addition to the tax commissioner, were Wm. Langer, attorney general of the state of North Dakota, and the county auditor of each and every county in the state.

The plaintiffs joined, in addition to the Capital Trust & Savings. Bank, were Drake & Ballard Company; Gold-Stabeck Company; Minneapolis Trust Company; Grandin Investment Company; Henepin Mortgage Company; Minnesota Loan & Trust Company; Merchants' Trust & Savings Bank; St. Paul Cattle Loan Company; The Farmers' & Mechanics' Savings Bank of Minneapolis; Hennepin County Savings Bank of Minneapolis, all of which are Minnesota corporations, except the St. Paul Cattle & Loan Company which is a West Virginia corporation. The latter company, being engaged in making chattel loans; its principal place of business is South St. Paul, Minnesota, and the former, real estate loans in the state of North Dakota, and the principal place of business of each is either at St. Paul or Minneapolis.

The plaintiffs made, served, and filed a complaint, setting forth the facts upon which they rely to obtain a permanent writ of injunction. To the complaint, the defendants demurred on the grounds that the complaint does not state facts sufficient to constitute a cause of action. This demurrer was, by an order of the district court, sustained, and a judgment of dismissal of the action entered. From that judgment, the plaintiffs have appealed to this court.

We will consider the matters involved in this case upon the matters presented in the district court, and the appeal from the decision and judgment of the district court. Our decision, upon the matters involved in this appeal, will dispose of the case.

The plaintiffs, with the exception of the St. Paul Cattle & Loan Company, are engaged in making real estate loans upon farm lands in the state of North Dakota. Some of them do an exceedingly large business in North Dakota, and there are none but what do considerable business. They are well known and long established loan companies.

That the plaintiffs had a large general business may be gathered from their complaint, and as most of these plaintiffs were before this state in the case of State v. Packard, supra, it may also be gathered from the facts in that case, and from the affidavit and papers filed therein. The plaintiffs, as we view the matter, have no desire to claim otherwise.

The statutes which it is necessary to examine in connection with this case, part of which, at least, must be interpreted, are as follows: Chap. 229, Session Laws of 1917, which was an amendment of § 2095, Comp. Laws 1913. It reads thus:

"Except as otherwise provided in this chapter, personal property shall be listed and assessed in the county, town, or district where the owner or agent resides; the capital stock and franchises of corporations and persons shall be listed in the county, town, or district where the principal office or place of business of such corporation or person is located in this state; and if there be no principal office or place of business in this state where such corporation or person transacts business, then personal property pertaining to the business of a merchant or manufacturer or corporation shall be listed in the town or district where his business is carried on.

"The taxation and revenue laws of this state shall apply with equal force to any person or persons representing in this state business interest that may claim domicil elsewhere, the intent and purpose being that no nonresident, either by himself or through any agent, shall transact business within the state without paying to the state a corresponding tax with that exacted of its own citizens; and all bills receivable, obligations, or credits arising from business done in this state are hereby declared assessable within this state, and at the business domicil of said nonresident, his agent, or representative; provided, however, no insurance company paying the state a percentage of its gross premiums received in the state shall be subject to the provisions of this act."

Section 1 of chapter 230, Session Laws of 1917, reads thus: " 'Money' and 'credits,' as the same are defined in § 2074, Comp. Laws 1913, including bonds and stocks, are hereby exempted from taxation other than that imposed by this act, and shall hereafter be subject to an annual tax of three mills on each dollar of the fair cash value thereof. But nothing in this act shall apply to money or credits belonging to incorporated banks or building and loan associations situated in this state, nor to any indebtedness on which the tax is paid under a mortgage registration act, or is exempted by statute."

Section 2074, Comp. Laws 1913, defines the term "credits" as follows: "The term 'credits' means and includes every claim and demand for money or other valuable things, and every annuity or sum of money receivable at stated periods, due or to become due, and to all claims and demands secured by deeds, or mortgages due or to become due."

In 1919 the legislature of this state enacted a statute known as Sen-

ate Bill No. 40, which is chapter 229, Session Laws of 1919, which amended and re-enacted § 2095, Comp. Laws of North Dakota, for the year of 1913, as amended by chapter 229, Session Laws of North Dakota of 1917, relative to revenue, taxation and fixing the situs of personal property for tax purposes. As thus amended, it reads thus: "Except as otherwise provided in this chapter, personal property shall be listed and assessed in the county, town or district where the owner or his agent resides; the capital stock, bond issues and franchises of corporations and all mortgages, notes, bills payable and other intangible property of a person or corporation shall be listed in the county, town or district where the principal office or place of business of such corporation or person is located in this state; and if there be no principal office, or place of business in this state, where such corporation or person transacts business, then personal property pertaining to the business of such person or corporation shall be listed in the town or district where the business is carried on or where the property upon which debts payable to him or it exists. The taxation and revenue laws of this state shall apply with equal force to all property and business and all increase or profit therefrom, though the owners or recipients of the same may have or claim domicil elsewhere, the intent and purpose of this act being that all property or interest in property within the state, or income or profit derived therefrom, shall be subject to all the taxes imposed by the laws of the state whether the owner of such property or the person receiving such income or profit reside within the state or elsewhere; and all bills receivable, obligations or credits secured by or upon any property existing within the state, including the shares of stock and bonds of corporations organized or doing business in the state or owning property therein, shall be taxable at the residence of the holders of such obligations within the state, if such residence there be, or otherwise the tax shall be deductible upon such obligations in the hands of the debtor or his agent, or the agent of the creditor within the state; and in every case where the tax is due and unpaid, it shall constitute a first lien upon the property upon which such obligation is secured, and a part of such obligation, which shall be satisfied in any action for the enforcement of such obligation, and the amount of the tax withheld and paid to the state, and deducted from the amount awarded to the judgment creditor in such action; provided, that no in-

surance company paying the state a percentage of its gross premiums received in the state shall be subject to the provisions of this act."

Under chapter 226, Session Laws 1919, it was made the duty of the attorney general, upon complaint of the tax commissioner, when he had reason to believe that certain personal property, known as money and credits, had not been listed for assessment as provided by chapter 230, supra, to cause an investigation to be made, and upon notice and hearing to value and assess any such property which had not been listed, and to certify the assessment to the county auditor of the county wherein the corporation or company, association or person owning such property has situs, for the purpose of taxation. Under such laws, the attorney general has authority and power to subpœna the corporation, company, association or person to appear before him with books, papers and records, and under oath, submit to examination as to the assessment of said personal property. It is not necessary to refer to the other sections in this chapter. They relate principally to the duty of the county auditor, the effect of serving a subpœna as above provided for, and to witness fees and mileage, etc.

The legislature of 1919 also enacted chapter 222, Session Laws 1919, providing for a tax on shares of stock or corporations, joint-stock, companies or associations, then and thereafter, organized in the state, for profit, and having capital stock represented by shares or by issuing bonds, and provided for the collection annually thereon of a special excise tax, with respect to the carrying on or doing business in the state by such corporation, of 50 cents for each $1,000 of the fair value of the capital stock or bonds issued. And provided further that in estimating the value of the capital stock, the surplus and undivided profits of such corporation, joint-stock company or association shall be included, and provided further that the amount of such annual tax shall, in all cases, be computed on the basis of the fair average value of the capital stock and bonds for the preceding year, and further provided that, for the purpose of the tax, an exemption of $10,000 shall be allowed from the capital stock of such corporation, joint-stock company or association. That law further provides that every corporation, joint-stock company or association, now or hereinafter, organized under the law of any other state, and United States, or a foreign country, and engaged in business in the state during the previous calendar year, shall pay annually a special excise

tax, with respect to the carrying on or doing business in the state by such corporation, joint-stock company or association, the equivalent to 50 cents for each $1,000 of the capital actually invested in the transaction of business in the state, and provided further that, in the case of a corporation engaged in business partly within and partly without the state, investment within the state shall be held to mean that proportion of its entire stock and bond issues which its business within the state bears to its total business within and without the state, and where such business within the state is not otherwise more easily and certainly separable from such entire business within and without the state; business within the state shall be held to mean, such proportion of the entire business within and without the state as the property of such corporation within the state bears to its entire property employed in such business, both within and without the state.

The amount of such annual tax is to be computed on the basis of the average amount of capital so invested during the preceding calendar year, and further provides that, for the purpose of the tax, an exemption of $10,000 from the amount of capital invested in the state shall be allowed only if such corporation, joint-stock company or association furnished to the tax commissioner all the information necessary to its computation.

There are other provisions relating to railroad, telephone, telegraph, and express companies, and others that need not be noticed in this decision, and there are certain other organizations exempted from its provisions.

The method by which the plaintiffs claim their real estate loan business in North Dakota is transacted, is illustrated by that followed by the Capital Trust & Savings Bank, which is claimed to be substantially as follows: Persons or corporations living in the state of North Dakota, and engaged in the banking, loan or real estate business there, having applications for loans made to them by owners of farms and other lands in the state of North Dakota, submit such applications to the Capital Trust & Savings Bank.

The applications for such loans are in writing and are sent by mail to the office of the Capital Trust & Savings Bank at St. Paul, Minnesota, for its consideration. In some cases, the plaintiff accepts the applications and in others, the applications are rejected. If it is decid-

ed to make the loan applied for, the notes and mortgages are executed by the borrower, who is generally a resident of the state of North Dakota.

The loan broker in North Dakota, through whom such application is made, attends to the execution and recording of all papers, and when the notes, mortgages and other papers are complete, they are sent by mail to the plaintiff in St. Paul, Minnesota, for its examination and approval. It also examines the papers at the city of St. Paul, Minnesota. The abstracts of title are examined there, and if the papers are approved, the money loaned is transmitted by the plaintiff in St. Paul, to the loan broker by whom application is received, either by drafts or by cashier checks drawn on funds in the state of Minnesota; or, in some instances, the funds are deposited in banks in the state of Minnesota to the credit of the loan broker through whom the application is received.

The plaintiff claims to have no agent acting for it in such matters in the state of North Dakota, and that the business is transacted through loan brokers of North Dakota, who have no authority to act for the plaintiff nor accept loans for it, nor bind it in any way. They claim further, that loan brokers in North Dakota, through whom such applications are made, receive their commissions for compensation from the borrower, and as the borrower's representative.

The mortgage and notes are usually signed within the state of North Dakota. When the loan is made, the notes, mortgages and other papers in connection with it are kept by the plaintiff at its office in the city of St. Paul, so long as it owns the same.

The plaintiff does not, and has not, heretofore, kept any funds within the state of North Dakota for investment. The notes secured by such mortgages are made payable at the office of the plaintiff in the city of St. Paul. In some instances, the plaintiff purchased notes and mortgages from banks or persons engaged in the mortgage and loan business in the state of North Dakota, which have previously acquired the same, and in all such cases the papers relating to such mortgage loans are sent to the plaintiff at its office in St. Paul, for examination and approval, and if the plaintiff determines to purchase such loan, the purchase price is transmitted from the city of St. Paul by draft or

45 N. D.—13.

cashier's check otherwise in the same manner as where the loan is made by the plaintiff in the first instance.

The St. Paul Cattle & Loan Company, which conducts its business of making or purchasing loans, secured by chattel mortgage, proceeds in the same manner as the Capital Trust & Savings Bank, the only difference being that the notes, held and owned by it, are secured by chattel mortgages on live stock or personal property in North Dakota.

It is claimed that all the notes and mortgages now held, or held on April 1, 1919, by any of the plaintiffs, were acquired in the manner above set forth, and that none of said notes or mortgages arose out of any business transacted in the state of North Dakota, unless the making or purchasing of mortgage loans, in the manner above set forth, constitutes doing business in the said state.

It is further claimed that none of the plaintiffs kept any capital or funds in the state of North Dakota for investment or had or maintained any agents or place of business in said state, and that all of the loans are kept and retained by the respective plaintiffs at their places of business, aforesaid, outside of the state of North Dakota, from the time the loans are acquired until the same are paid or sold.

It is further claimed that each of the promissory notes and writings, signed by the maker, contains an unconditional promise to pay a sum certain, in money, at a definite future time, and that the same are payable to order or bearer, and are negotiable in form and in fact.

The complaint properly avers all of the foregoing as facts, and, in addition thereto, avers there is no statute in force in the state of North Dakota providing for the taxation of mortgages as an interest in real estate, or providing for the taxation of real estate by dividing the real estate tax between the mortgagors and the mortgagees in proportion to their respective interest, and that the rate of taxation in the state of North Dakota, at all times, has been and is largely in excess of three mills on dollar for real estate and personal property other than money and credits.

A demurrer having been entered to the complaint and sustained, judgment was entered for the dismissal of the action.

The errors assigned are, that the court erred in making its order, sustaining the demurrer, and in ordering and rendering judgment in

favor of the defendant against the plaintiff for a dismissal of the action, and for costs.

The principal question presented in this case has reference to the situs of the intangible personal property in question, for the purposes of taxation, and further, whether a tax levied in pursuance of the law under consideration, is a violation of any of the provisions of either the state or Federal Constitution. A disposition of these questions will dispose of the entire case.

The plaintiffs invoke the ancient legal fiction of *"mobilia sequuntur personam."* Perhaps there has been no fiction of law under cover of which the owners of intangible property, such as we have under consideration, that has been more generally used to avoid payment and discharge of duties and obligations to the sovereign power, than the one we have under consideration. In other words, none which permitted such great facility in avoiding the taxation of this class and character of property. It has been by the invocation of this rule that persons without limit, who possessed this kind of property, have successfully avoided being taxed thereon, and thereby avoid discharging their just liabilities and duties to the government and the public.

Under this fiction, untold millions of dollars of the most valuable of property, this intangible property, wholly escapes taxation. The result is, too often, that those best able to pay taxes, by reason of being large owners of this class of property, almost wholly escape the burdens and duties imposed by taxation. Shrewdly, they keep invested their wealth in such intangible property and possess only a minor part of their wealth in tangible property, which, of course, cannot well escape taxation; thus, the burdens of taxation may be imposed largely upon those least able to bear it, and upon those who are the owners of tangible property.

A "fiction of law" is an assumption or supposition of law that something which is or may be false, is true, or that a state of facts exists which has never really taken place. 2 Words & Phrases, 2d Series, p. 526. See also the cases there cited of Leavell v. Blades, 237 Mo. 695, 141 S. W. 893. "When logic and the policy of the state conflict with the fiction, due to historical tradition, the fiction must give way." Blackstone v. Miller, 188 U. S. 189, 47 L. ed. 439, 23 Sup. Ct. Rep. 277.

A fiction of law is the imagination of something to be true which,

in fact, is, or may be, false, and which imagines a condition to exist which, in fact, does not exist. The fiction, above mentioned, is one which perhaps falls within any of the definitions above given, and it is really the basis upon which the claims of plaintiffs herein really rest. It is the corner stone of their argument which, if removed, would result in their case falling, of its own weight, for want of support.

The notes and mortgages in question are choses in action, and are intangible property, and having been executed and delivered in the manner above set forth, and having been delivered into the possession of the plaintiffs, and now held by them, the question arises: What is the character of the property sought to be taxed, and where is the proper situs in such case for the exercise of the power of taxation?

It is elementary that the power of the state to levy a tax upon property extends only to property within the state, and the jurisdiction of the state to tax ceases at the lines bounding the state, for there the jurisdiction of another state to tax commences.

It has been held that the state where the owner maintains his domicil may levy taxes upon shares of stock owned by him in a foreign corporation, holding all of its property, and doing all of its business in another state. Hawley v. Malden, 232 U. S. 1, 58 L. ed. 477, 34 Sup. Ct. Rep. 201, Ann. Cas. 1916C, 842. It has also been held where one has deposited in a banking institution of another state than his domicil, where he carries on a business from which deposits are derived, and which belongs to the depositor, but not used by him in the business, that such deposits are subject to taxation at his domicil though they are also subject to taxation in the state where the business is carried on. Fidelity & C. Trust Co. v. Louisville, 245 U. S. 54, 62 L. ed. 145, L.R.A.1918C, 124, 38 Sup. Ct. Rep. 40.

In the cases just cited, the taxation was not upon the theory that the state had a right to tax propery beyond the state limits, but in accord with the theory that the property was within the jurisdiction of the taxing power.

The law which we are considering proposes to fix the situs of the character of property under consideration, for the purposes of taxation, at the residence of the debtor.

It is the public policy of this state, acting through legislative authority by enactment of the statutes we are considering, to abolish the fic-

tion of *mobilia sequuntur personam,* in so far as it is applicable to this character of property. As applied to this class of property after the enactment of the statutes in question, that fiction has no application. It no longer exists as a fiction of law in this regard. The authority, above cited, is sufficient to demonstrate that the fiction must give way to the logic and policy of the state which conflicts with it. This state has the power to render the fiction impotent, and fix the situs of this intangible property within this state. It has the right to assume actual control of and localize it for the purposes of taxation; this, in the exercise of its sovereign powers, and upon the theory and principle that the mortgages and notes in question are not, in truth and in fact, the actual property sought to be taxed, but are but an evidence of it.

We may illustrate as follows: Supposing A has $1,000,000 in a bank in New York city. That, is property. He concludes to loan all of it upon farm lands in the state of North Dakota, and does loan it in the same manner as the plaintiffs herein; by this transaction, he has transferred his property, the $1,000,000, to the various borrowers in the state of North Dakota, who have received said property. They are A's debtors; they have, in their possession, A's property, the money, which he loaned them. Each of them gave A something to show they had, in their possession, his property. Each of them gave him a promissory note which showed how much property or money they had received from him, and which showed at what time they were to return it to him, and how much they were to pay him for the use of it while they had it in their possession. The note was secured by a real estate mortgage upon land, in order to insure that the property would so be returned to A. In other words, the notes and mortgages, in the hands of A, are but evidence of the fact that he has placed his property, the money in question, in the hands of those to whom he loaned it. The actual property is now in the hands of the debtors. While it is in their hands, it is not down in New York city, nor elsewhere; it is with the debtors.

If A, after he received the notes and mortgages, the evidences of where his property was located, had placed them in a safe in New York city, and the safe should burn and all the notes and mortgages were destroyed; and supposing further that at the same time all the records in the counties in North Dakota where A had loaned his money were

destroyed by fire or otherwise, this would not destroy A's property, but would only, to some extent, destroy the evidence as to what persons in the state of North Dakota had some of A's property.

In either case, the debtors still have A's property, and, by showing that the evidence of the location of this property has been destroyed, he may supply that evidence by oral testimony, by testimony from his debtors and by his own testimony and records, and, when he has made proper proof, may recover every dollar of property which he has permitted the debtors to have, and enforce his obligations and mortgages against their land to the same effect as if he still had the mortgages and notes. Each of them would be compelled, upon proper proof, to return to A every dollar of the property which they received from him, and this, notwithstanding all notes and mortgages were destroyed and every record showing such mortgages was destroyed. The thing of value, therefore, is not the notes and mortgages. They are but evidences of the obligation of that property which the debtor has received, and his obligation to repay it.

These are the primary things and they will remain after all evidence of the indebtedenss or the credit is destroyed. It must not be forgotten that it is the sovereignty of the domicil of the debtor which gives validity to the obligation; that protects and cares for the property which A loaned to his debtors; that the remedies, which the sovereign power of the debtor's domicil has provided for A to enforce the obligations against his debtor, to recover from his property placed with him, are also a part of the very contract between A and his debtors.

The writer of this opinion used substantially the following language in his dissenting opinion, in the case of State ex rel. Langer v. Packard, supra; we think it applicable to case now before us. "There can be no question but what the state has jurisdiction to impose a tax, under consideration, upon the intangible property [involved] in this proceeding. The intangible property is located within this state. That is the obligation, the thing of value, is within this state. The debtor resides within this state. The power to enforce the obligations, under consideration, is within this state. . . . Though the evidence of such obligation may be without the state, the obligation, the thing of value, the credit, being within this state, the state has jurisdiction to apply [its] taxing laws to such obligation and credits in the same manner as it

applies the taxing laws to similar obligations and credits of its own citizens." See State ex rel. Langer v. Packard, 40 N. D. 182, 168 N. W. 683.

We are satisfied the true situs for taxation purposes of the intangible property, which is the subject of this litigation, is in the state of North Dakota at the domicil of the respective debtors; that the state had the authority and power to, and by the statutes under consideration did, fix the situs of this property for the purposes of taxation at the domicil of the debtor.

The law is a salutary one. It imposes no burden upon the nonresident owner of this property that is not equally borne by a citizen of this state possessing like property. It is also further to be noted that, it is a law which, in its operation, will, in all probability, cause this large class of property, which in amount and value in this country probably equals or exceeds all tangible property, both real and personal, and which has largely, heretofore, escaped taxation on account of the inability of taxing officers to locate it, to be hereafter assessed and caused to bear its just proportion of the expense of maintaining the sovereignty, the laws of which protect such property equally with all other kinds of property.

No taxing offcer may or can know of the credits one possesses, especially if those credits and obligations are those of other states or foreign countries, than that where the one whose property is sought to be assessed resides, or unless such a one voluntarily discloses the possession of such credits. The taxing officer may readily know, from the debtor, what obligations or debts he owes. Especially would the debtor be anxious to give such information when he is given to understand that the object of procuring it is to tax the obligation against the person to whom it is payable, whether he be a resident or nonresident, for the purpose of compelling such one to pay, to the sovereign power, his just contribution to the public needs, and in support of such sovereign power in return for the benefits of the protecting laws of that sovereign power, which are thrown about such obligation and the conduct of the business.

In the case of State ex rel. Langer v. Packard, supra, this court, with the exception of the writer hereof, held that the three-mill tax sought to be levied upon the intangible property involved in that case, which

is similar to that involved in this case, could not be levied, for the reason that it was not shown that the plaintiffs in that case were transacting business within the state of North Dakota, or that the business, out of which the credits arose, was transacted within the state, and that doing business within the state meant more than a single transaction or a series of isolated transactions, and that the nonresident who had established no place or had no agent or representative within the state, or did not keep his capital or funds for investment in the state, but made loans on applications sent to him by loan brokers in the same manner and upon the same general plan as is involved in the present case, were not doing business within the state, within the meaning of chapter 229, Sess. Laws 1917.

The Legislative Session of 1919 promptly met this objection by the passage of Senate Bill No. 40, which is chapter 229 of the Laws of 1919, which amended § 2095, Comp. Laws 1913, as amended by chapter 229, Session Laws of 1917, by leaving out the objectional words and phrases above referred to. The amendment is shown in the Senate Bill No. 40 as above set forth.

It will be seen from the examination of Senate Bill No. 40, that it makes applicable the taxation and revenue laws of the state to all property and business, and all increase and profit therefrom within the state, though the owners or recipients of the same may have or claim domicil elsewhere. That law also declares the legislative intent and purpose of the act to be, that all property or interest in property within the state, or income or profit derived therefrom, is subject to taxation by the laws of this state, regardless of the fact of whether the owner of such property, or person receiving such income or profit resides within the state or elsewhere, and provides further that such tax shall be deductible from the obligations in the hands of the debtor or his agent, or the agent of the creditor within the state, and provides further that it shall be a first lien upon the property upon which the obligation is secured, etc. Thus, it is clearly the intent of the act under consideration to tax all intangible property of the nature of that involved in this action, and the situs of it for the purpose of taxation is the residence or domicil of the debtor; that it is the further purpose of the act to tax all such obligations whether they are isolated transactions or form one of many.

It is clear the legislature has, by this act, localized, for the purpose of taxation, everything of value, including intangible property such as is the subject of this action, arising out of business transactions within the state, whether isolated transaction or not, at the domicil of the debtor within the state.

It may be well, at this point, to examine some of the decisions cited by the plaintiffs in support of their contentions, which assert the invalidity of the statutes in question, and those of the respondent's which, it is claimed, establish the validity of the statutes. Such decisions may be considered at the same time, as an analysis of the authority cited by plaintiffs will necessitate a reference to the authority cited by the respondents. We cannot refer to many of the decisions as it would make this opinion of undue length.

The leading case upon which plaintiffs largely rely to sustain their contention is State Tax on Foreign-held Bonds, 15 Wall. 300, 21 L. ed. 179. It may be said of that case, that it fully recognizes the fiction of law, *"mobilia sequuntur personam,"* and it held that the bonds, under consideration in that case, were property only in the hands of the holders, and when held by a nonresident were beyond the jurisdiction of the state to tax.

It is claimed by plaintiffs that that decision of the Supreme Court of the United States has never been overruled. In a sense, that court has never, in expressed terms or words, overruled that decision, and as we understand the procedure in that court in this respect, it never does overrule a former decision by express language. In practice, however, it does, in effect, overrule its decisions by changing the rule in a given case to what it was in a former decision under a somewhat similar state of facts. For instance, in decisions subsequent to that rendered in the case of State Tax on Foreign-held Bonds, supra, the rules and principles of law, applied in that case, were largely supplanted and superseded by other and, as we believe, more equitable and just rules.

The rule stated by the United States Supreme Court in the case of State Tax on Foreign-held Bonds was, in principle, to all intents and purposes, practically overruled in the case of New Orleans v. Stenpel, 175 U. S. 309, 44 L. ed. 174, 20 Sup. Ct. Rep. 110. At that time Louisiana had in force and effect a Situs Act passed by its legislature in 1898, and § 7 of it related to the taxation of stocks of mercantile

firms whether such firms were domiciled in the state of Louisiana or elsewhere. The express intent and purpose of the act being that no nonresident, either by himself or through an agent, should transact business within the state of Louisiana without paying to the state a corresponding tax with that exacted of its own citizens, etc.

It further provided that all bills receivable, obligations or credits arising from the business done in the state, were assessable within the state at the business domicil of the nonresident, his agent, or representative.

In the case of Liverpool & L. & G. Ins. Co. v. Board of Assessors, 221 U. S. 346, 54 L. ed. 762, L.R.A.1915C, 903, 31 Sup. Ct. Rep. 550, the Louisiana Act of 1898 was again construed. Part of the language used in that case is quite applicable to this, as bearing upon the right of the legislature to fix the situs of the class of property we are considering for the purpose of taxation. In that case, the court used the following language:

"The asserted distinction cannot be maintained. When it is said that intangible property, such as credits on open account, have their situs at the creditor's domicil, the metaphor does not aid. Being incorporeal, they can have no actual situs. But they constitute property; as such they must be regarded as taxable, and the question is one of jurisdiction.

"*The legal fiction expressed in the maxim, 'mobilia sequuntur personam,' yields to the fact of actual control elsewhere. And in the case of credits, though intangible, arising as did those in the present instance, the control adequate to confer jurisdiction may be found in the sovereignty of the debtor's domicil. The debt, of course, is not property in the hands of the debtor; but it is an obligation of the debtor, and is of value to the creditor, because he may be compelled to pay; and power over the debtor at his domicil is a control of the ordinary means of enforcement. Blackstone v. Miller, 188 U. S. 205, 206, 47 L. ed. 444, 445, 23 Sup. Ct. Rep. 277.* Tested by the criteria afforded by the authorities we have cited, Louisiana must be deemed to have had jurisdiction to impose the tax. The credits would have had no existence save for the permission of Louisiana; they issued from the business transacted under her sanction within her borders; the sums were payable by persons domiciled within the state, and there the rights of

the creditor were to be enforced. If locality, in the sense of subjection to sovereign power could be attributed to these credits, they could be localized there, if as property they could be deemed to be taxable at all, they could be taxed there."

The court further said in that case referring to the question of situs: "But, as we have seen, the jurisdiction of the state of his domicil over the creditor's person, does not exclude the power of another state in which he transacts his business to lay a tax upon the credits there accruing to him against resident debtors, and thus to enforce contribution for the support of the government under whose protection his affairs are conducted. And that the jurisdiction of the latter state rests upon considerations which are more fundamental than that notes have been given or that the credits are evidenced in any particular manner, was clearly brought out in the concluding statement of the opinion in the case of Metropolitan L. Ins. Co. v. New Orleans, 205 U. S. 402, 51 L. ed. 856, 27 Sup. Ct. Rep. 499. There the court said: 'Moreover, neither the fiction that personal property follows the domicil of its owner, nor the doctrine that credits evidenced by bonds or notes may have the situs of the latter, can be allowed to obscure the truth.' Blackstone v. Miller, 188 U. S. 189, 47 L. ed. 439, 23 Sup. Ct. Rep. 277."

To the same effect is the case of Metropolitan L. Ins. Co. v. New Orleans, 205 U. S. 395, 51 L. ed. 853, 27 Sup. Ct. Rep. 499. This was a case in which the board of assessors of New Orleans attempted to assess credits of the plaintiff insurance company, domiciled in New York. It made loans upon its policies to citizens of New Orleans or other citizens of Louisiana, and the method of transacting such business was practically identical with the method employed by the plaintiffs in the case at bar. The Supreme Court of the United States in that case said: "The evident purpose of this law is to lay the burden of taxation equally upon those who do business within the state. It requires that in the valuation for the purposes of taxation of the property of mercantile firms, the stock, goods and credits shall be taken into account to the end that the average capital employed in the business shall be taxed. This method of assessment is applied impartially to the citizens of the state, and to the citizens of other states or countries doing business, personally or through agents, within the state of Louisiana."

To the same effect, Savings & L. Soc. v. Multnomah County, 169 U. S. 421, 42 L. ed. 803, 18 Sup. Ct. Rep. 392. The last case, as well as the foregoing cases cited, sustains the conclusions at which we have arrived in this case. It does appear, however, that the statute of Oregon, under consideration in that case, considered the mortgage as an estate in the land mortgaged, and partly, at least, upon this theory, held that the mortgage was taxable as an interest in land.

Under the statutes of North Dakota a mortgage on land does not transfer an interest therein. Section 6725, Comp. Laws 1913, defines a mortgage thus: "Mortgage is a contract by which specific property is hypothecated for the performance of an act without the necessity of a change of possession." Section 6726, Comp. Laws. "The lien of the mortgage is special unless otherwise expressly agreed and is independent of possession." Section 6727. "Every transfer of an interest in property, other than in trust, made only as security for the performance of another act, is to be deemed a mortgage, except when in the case of personal property, it is accompanied by an actual change of possession in which case it is deemed a pledge." Section 6740: "A mortgage does not entitle the mortgagee to the possession of the property unless authorized by the expressed terms of the mortgage."

It is clear, under the laws of this state, that a mortgage upon land does not transfer to the mortgagee an estate in the land but merely gives a lien thereon as security for the debt. There is no transfer of title nor of possession. The mortgage and the note in his hands are personal property, are choses in action, and, under the statute we are considering, are taxable as such at the domicil of the debtor. There can be no doubt that it is competent for the legislature to determine that a real estate mortgage shall, for the purposes of taxation, be considered and determined to be personal property.

From the laws of this state above cited, and the acts under consideration, real estate mortgages, for the purposes of taxation, are determined to be personal property. There is no room for the plaintiffs to say that the tax sought to be levied is invalid by reason of it being double taxation. It is nothing of the kind. The tax sought to be collected from the plaintiffs is not a tax against the land, but a tax against certain personal property, to wit: mortgages and notes by them held, which are, by the laws of this state, for the purposes of taxation, deter-

mined to be personal property, and the situs for such taxation fixed at the domicil of the debtor.

The plaintiffs were in no position to raise the question of double taxation, if there be such a question in the case, which we think there is not. The tax sought to be levied is not one against land nor any estate in land, but a tax purely upon personal property.

The state, as we view the matter, in view of the statutes under consideration, had jurisdiction to tax the notes and mortgages, the situs of which, for the purpose of taxation, was, by the statutes, fixed at the domicil of the debtor.

There is no contravention of the 14th Amendment of the Federal Constitution, nor any violation of the contract clause thereof, by requiring the debtor to pay the tax in question, and deduct it from the debt. There can be no violation of any constitutional provision, either state or Federal, if the state has jurisdiction to levy the taxes in question. The statute in question, having declared the intangible property under consideration to be personal property, and having fixed its situs, for the purpose of taxation, at the domicil of the debtor, and the state having the authority and power to change the rule of *mobilia sequuntur personam,* and having done so, its jurisdiction to levy the tax would seem certain.

It was said in the case of Bristol v. Washington County, 177 U. S. 133, 44 L. ed. 701, 20 Sup. Ct. Rep. 585: "Persons are not permitted to avail themselves for their own benefit of the law of the state in the conduct of business within its limits, and then to escape their due contribution to the public needs through action of this sort, whether taken for convenience or by design."

After the submission of this case, the laws to which we have referred, with the exception of chapter 222 of the Session Laws of 1919, at a special session of the legislature of 1919, were repealed, by the enactment of chap. 62 of the laws of that special session, and therein, money and credits, as the same are defined in § 2074, Comp. Laws 1913, are exempted from taxation, with the exception that the income therefrom, except as to income derived from loans on North Dakota real property, shall be taxable under the provisions of chap. 224 of the Laws of North Dakota, for the year 1919, except as therein exempted.

Chapter 255 of the Laws of North Dakota, for the year of 1915,

chap. 230 of the Laws of North Dakota, for the year of 1917, as amended by chap. 226 of the Laws of North Dakota, for the year of 1919, were specifically repealed.

Defendants' entire case having been based and rested upon the laws which are repealed, as above stated, there remains nothing to support the judgment entered in defendants' favor. There is a provision in chap. 62 of the laws of the special session which provides that taxes theretofore levied under any of the tax laws of this state shall not be invalidated or discharged. There is no showing, however, that any taxes were levied under the laws which have been repealed, and there is nothing in that regard to support the judgment rendered in this case.

In these conditions, it will be necessary to reverse the judgment appealed from.

As we understand the matter, chapter 222 of the Session Laws of 1919, in a case in the United States circuit court of appeals, has been decided to be in conflict with the Federal Constitution.

An appeal has been taken from that decision, and is now pending, and about to be heard before the Supreme Court of the United States. If the judgment of the Circuit Court of Appeals is affirmed, it will follow that the law will be declared invalid, and will thereafter be of no force nor effect.

The laws in question having been repealed, with the exception of chap. 222 of the Session Laws of 1919, I concur in the result arrived at by the opinion of the court.

ROBINSON, J. This is a double-header on a statute which has been repealed. In the first case the plaintiffs are nonresident jobbers. The money loaners hold mortgages, secured on lands, in every county of the state, and the jobbers likewise hold securities and credits for goods sold. The defendants claim that such securities are subject to taxation. This, the plaintiffs deny. To test the matter each party brings an original proceeding in this court to enjoin the tax assessment and levy. Then, for the same purpose, each party brings an action in the district court of Burleigh county. A demurrer to the complaint is sustained and each party appeals. The question presented is: Are the notes and securities subject to assessment and a tax of three mills on the dollar?

The question is on the validity or proper construction of the recent money and credits statutes: chap. 229, Laws 1917; chap. 230, Laws 1917; H. B. 83 of March 5, 1919; S. B. 40, March 6, 1919; H. B. 47, March 7, 1917.

As it seems, these statutes are framed with an idea that it is competent for the state to levy its taxes on adjacent states; to levy taxes without stating the object of the same; to levy taxes for the municipalities, instead of leaving them to levy their own taxes; to levy a percentage tax without limit on any class of property and to assess all property by the tax commissioner and the attorney general at their office in the Capitol.

All that is contrary to the plain words of the Constitution:—

"Section 174. The Legislative Assembly shall provide for raising revenue sufficient to defray the expense of the state for each year, not to exceed in any one year four mills on the dollar of the assessed valuation of all taxable property in the state, to be ascertained by the last assessment made for state and county purposes, and also a sufficient sum to pay interest on the state debt.

"Section 175. No tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same, to which only it shall be applied.

"Section 176. Laws shall be passed, taxing by uniform rule, all property according to its true value in money.

"Section 179. All property, except as hereinafter in this section provided, shall be assessed in the county, city, township, town, village, and district in which it is situated in the manner prescribed by law." (The exceptions relate to the property of the common carriers, which is to be assessed by the State Board of Equalization.)

Under Article 29, the recent amendment to § 176, taxes shall be uniform upon the same class of property, including franchises within the territorial limits of the authority levying the tax. This does authorize the legislature to classify property, as it has done, but it gives no authority to vary the constitutional manner of making the assessment and levying the taxes. The conclusions are these:

(1) Every law imposing a tax must state distinctly the object of the same, and the law imposing the three-mill tax does not in any man-

ner state the objects of the same. It merely apportions the tax between the state and the municipalities.

(2) The state tax levies are limited to four mills on the dollar of the assessed valuation of all the property in the state. Hence such levies must be based on the assessed valuation and they may not exceed the limit.

(3) The municipal corporations are self-governing constitutional entities. They must control their own local affairs and levy their own taxes. Hence it is not competent for the legislature to levy a tax of three mills to be thrown into the laps of the municipalities. Const. §§ 130–183; Ex parte Corliss, 16 N. D. 470, 114 N. W. 962.

(4) With a few exceptions relating to common carriers, all property must be assessed in the county, city, township, village or district in which it is situated. It must be done in the manner prescribed by law and it must be done by the assessor of the taxing district, and not by any one outside of the district. And the party assessed must have his day in court; he must have the right to be heard and a right of appeal to the boards of equalization and the courts.

(5) The state has no jurisdiction to tax any nonresident who has in the state no business agency, no property, money or credits with a local or business situs or domicil.

(6) As mortgagors bear all the burdens imposed upon their security, the three-mill statute imposes on them double taxation and it impairs the obligation of their contracts and lessens the means of enforcing them. Validity and remedy are both parts of the obligation of a contract and are protected by the Federal Constitution against impairment.

Reversed and action dismissed.